## O'Reilly Estate.

Argued April 21, 1952, Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

350

*Thomas A. Galbally,* with him *John J. Sullivan* and *George B. Balmer,* for appellants.

*Samuel B. Russell,* with him *Harold J. Ryan,* for appellee.

OPINION BY MR. JUSTICE BELL, June 24, 1952:

Mrs. Mary E. Heizmann O'Reilly, whose trust estate is now being adjudicated, died March 1, 1904, a resident of Berks County, Pennsylvania. In her will she gave her daughter, Mrs. Forster, the income from a trust estate of approximately $57,000. for life, with a power to appoint the principal in and by her will. Mrs. Forster, the donee of the power, died domiciled in California, on June 4, 1950, leaving a will in which she made the following (relevant) provisions: Testatrix directed the payment of her debts and funeral expenses; then bequeathed to the Bishop of the Diocese of Los Angeles, $3,000. for masses for the repose of the souls of herself and her immediate family; made certain gifts to a friend, Emma E. Reiner; and then devised to her two cousins (who are also residuary legatees) all her undivided interest in certain real estate in Pennsylvania. She then provided as follows:

"Seventh: *All the rest,* residue and remainder *of my estate* of every kind and character and wheresoever

situate *including*\* that portion of my mother's said estate derived from my father, James A. O'Reilly, Esq., which was left in trust for my lifetime with the power of appointment, I give, devise and bequeath, in fee simple and absolutely, in equal shares, to the following: Saint Joseph's Seminary of Baltimore City, Maryland, a corporation created and existing under the laws of Maryland; 'St. Joseph's Home, Jersey City, N. J.', a corporation created and existing under the laws of the State of New Jersey; St. Joseph's Home for Homeless Boys, 16th and Allegheny Street, Philadelphia, Pennsylvania; Little Sisters of the Poor of Los Angeles, 2700 East First Street, Los Angeles, California and Missionary Sisters of the Sacred Heart, a California corporation, of Los Angeles, California.

"Eighth: In the event that the net amount of my estate for distribution, devised and bequeathed to charitable or benevolent institutions or in trust for charitable purposes, shall exceed one-third of the total amount of my estate, then I do hereby give, devise and bequeath all the remainder of my estate over and above said one-third and not otherwise devised or bequeathed herein, to my said cousins, Theodora Heizmann and Mary Heizmann, in equal shares, or, in the event of the death of either of them, then to the survivor of them."

The five charities claim that under the Seventh paragraph they are entitled absolutely and exclusively to the entire Pennsylvania trust fund which Mrs. Forster appointed to them, and that the Eighth paragraph applies only to Mrs. Forster's individual estate. They contend that their interpretation is fortified (a) by the circumstances surrounding testatrix at the time she made her will, and (b) by the principle that an absolute gift cannot be cut down except by clear and unambiguous language: *Burpee Estate*, 367 Pa. 329, 80

---

\* Italics throughout, ours.

A. 2d 721. From the decree of the Orphans' Court of Berks County dismissing their exceptions and confirming the adjudication and distribution absolutely, the charities have taken this appeal.

The first question that arises is whether Mrs. Forster's will is to be governed by the law of California or by the law of Pennsylvania. The law of California applies generally to the interpretation of Mrs. Forster's will and to the disposition and succession of her property; but the exercise and interpretation of a power of appointment created by a donor who was domiciled in Pennsylvania is governed by the law of Pennsylvania: *Barton Trust*, 348 Pa. 279, 35 A. 2d 266; Restatement, Conflict of Law, §285.

In *Barton Trust* a situation arose almost identical with the present one. In that case the donor of a power of appointment was domiciled in Pennsylvania. The donee of the power died domiciled in New Jersey. This Court held that the law of Pennsylvania governed the exercise of the power of appointment and said (page 281) : "In order to determine whether the residuary clause constituted an exercise of the power it is first necessary to decide by the law of what state that question is governed. In executing a power of appointment the donee disposes of the estate as that of the donor, the appointment being referred back to the instrument which created the power as if it had been actually embodied therein, and it is no doubt because of this principle that it has been uniformly held that the proper and effective exercise of a power of appointment is, in the case of personalty, controlled by the law of the donor's domicile at the time of the creation of the trust."

With respect to the interpretation of wills, we said in *Britt Estate,* 369 Pa. 450, 454, 455, 82 A. 2d : "The pole star in the construction of every will is the testa-

tor's intent: Woelpper's Appeal, 126 Pa. 562, 17 A. 870; Mulert Estate, 360 Pa. 356, 61 A. 2d 841; Byrne's Estate, 320 Pa. 513, 181 A. 500. 'The testator's intent must be ascertained by a consideration of the *entire will* which of course must be read in the light of the circumstances surrounding him when he made it: Packer's Estate (No. 1), 246 Pa. 97, 92 A. 65; Hermann's Estate, 220 Pa. 52, 58, 69 A. 285; Mulert Estate, 360 Pa. 356, 61 A. 2d 841; March Estate, 357 Pa. 216, 53 A. 2d 606. The attendant circumstances include the condition of his family, the natural objects of his bounty and the amount and character of his property: Fahey's Estate, 360 Pa. 497, 500, 61 A. 2d 880; Mayer's Estate, 289 Pa. 407, 137 A. 627; Frisbie's Estate, 266 Pa. 574, 109 A. 663.'; Newlin Estate, 367 Pa. 527, 529, 80 A. 2d 819. . . . Where a testator's intent is clear from the language of his entire will, technical rules or canons of construction are unnecessary; . . ."

Considering the will in its entirety, it is clear that the testatrix, in the Eighth paragraph, intended under certain enumerated conditions to modify and limit the absolute gift which she had made to the five charities in the Seventh paragraph. Reading the two paragraphs together we are of the opinion that testatrix gave all her residuary estate, including the trust estate in Pennsylvania over which she had a power of appointment, to the five named charities, provided that if that gift should exceed one-third of the total amount of her net estate including the appointive estate, she bequeathed to her cousins, Theodora Heizmann and Mary Heizmann, all the balance of her above mentioned residuary estate, over and above the said one-third, excluding however from the cousins' share all property which she had theretofore otherwise bequeathed or devised.

The charities contend that the attendant circumstances as well as the language of the will show that the

gift to the cousins in the Eighth paragraph embraces only the property which testatrix owned individually and does not include the appointive trust fund. We do not agree with this interpretation. It will be noted that testatrix commenced the Seventh paragraph of her will: "All the rest, residue and remainder *of my estate*". She does not then say *"and also"*, but says *"including* that portion of my mother's said estate over which I have a power of appointment". It is clear from her language that she knew the distinction between her own individual estate and the estate over which she had a power of appointment, and that she blended these two estates and regarded them as "my estate" not for the payments of debts or for any general purpose, but for the purpose of bequeathing and distributing her residuary gifts.

The charities also contend that the circumstances surrounding the testatrix when she made her will clearly indicate that she had a strong reason to limit the gift which she made to them to one-third of her own individual property, but had no such reason to reduce or limit their share of the appointed estate. Section 41 of the California Probate Code of 1931, as amended, limits a testatrix's right to will more than one-third of her estate to charities if she leaves a surviving spouse or other close relatives (not, however, including cousins). The Code further provides that any property devised contrary to such section shall go to the surviving spouse (or other surviving close relative), unless there is a substitutionary residuary bequest or devise in the will.

Mrs. Forster married a man from Australia many years before she made her will. Shortly after the marriage she and her husband separated and he returned to Australia. They had no children. Whether he was living at the time of her death and if so his whereabouts, could not be ascertained by any of the parties. None

of the claimants know whether Mrs. Forster at the time she made her will believed her husband to be living or dead. Section 41 of the California Probate Code and the circumstances surrounding Mrs. Forster when she made her will may be persuasive reasons for limiting a gift to charities to one-third of her individual estate, but they do not exclude a desire or intent to similarly limit her gift of the appointive estate. She may not have known whether the charitable prohibition in the California Code would include an appointive trust fund in Pennsylvania or she may have had other satisfactory reasons for limiting her gift of the appointive trust estate. What is clear, in our opinion, is that she did limit, by the language of paragraphs Seventh and Eighth of her will, her residuary gifts to charities to one-third of her combined individual and appointive estates under the conditions set forth in the Eighth paragraph thereof.

An executor's account of Mrs. Forster's estate has not been filed in California, and there is nothing in the present record which conclusively shows, although it has been indicated, that Mrs. Forster's gifts of her residuary estate to charitable institutions exceeded one-third of the total amount of her estate including the appointive estate. If this situation exists, Theodora and Mary Heizmann would be entitled inter alia to all the balance or remainder of the trust fund over and above one-third thereof; proper adjustments, if any are necessary, can be made in their distributive shares of Mrs. Forster's individual estate either by the proper Court in California or by the parties themselves.

Decree affirmed at appellants' costs.