## Benson Estate.

214

Argued November 12, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Ernest Scott,* with him *John Grier Bartol, Jr.* and *Pepper, Bodine, Frick, Scheetz & Hamilton,* for appellant.

*Richard K. Stevens,* with him *Lewis M. Stevens, Seth W. Watson, Jr.,* and *Stradley, Ronon, Stevens & Young,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 3, 1955:

The appeals involve the construction of a will, which testamentary document consists of the will and nine codicils. Testatrix created eight income funds. By the fourth codicil she made the following provision: "ITEM: It is my wish and I hereby order and direct that all the Trusts created in my Will and Codicils which have not already ended by their own limitations shall absolutely cease and determine at the end of fifty years from the date of my death; and I direct that at the expiration of the said term of fifty years all legacies shall be paid over absolutely to the parties entitled thereto under my said Will and Codicils. . . ." The words of this codicil require judicial interpretation. A residuary beneficiary, appellant, contends that the words are too indefinite to identify the beneficiaries intended and that the court, being unable to reform the will, should decide that such bequests fall into the residue. The charities, on the contrary, contend that in the light of the surrounding circumstances it was the plain intent of testatrix that the church organizations so receiving the income for fifty years should receive the principal. In a comprehensive adjudication, unanimously approved by the court in banc, the learned court below decided that testatrix intended the charities which have received the income for fifty years should be awarded the principal.

It is, of course, well settled that where a testator fails to make provision for a contingency which actually happens, courts do not have the authority to supply the omission and thus reform the will: *Verner Estate*, 358 Pa. 280, 56 A. 2d 667; *Wainwright Estate*, 376 Pa. 161, 101 A. 2d 724, and the cases therein cited. But there exists no *omission* in the will. We are required to construe the words "the parties entitled thereto".

216

The polestar in interpreting wills is the *intent* of testator: *Prime's Petition,* 335 Pa. 218, 6 A. 2d 530; *Mulert Estate,* 360 Pa. 356, 61 A. 2d 841; *Lyman Estate,* 366 Pa. 164, 76 A. 2d 633; *Anderson Estate,* 373 Pa. 294, 95 A. 2d 674; *Lyle Estate,* 374 Pa. 344, 97 A. 2d 830. This intent must be gathered from the *whole* will: *Britt Estate,* 369 Pa. 450, 87 A. 2d 243; *O'Reilly Estate,* 371 Pa. 349, 89 A. 2d 513. Where words are equivocal, as they are in this case, the court may figuratively place itself in testator's armchair and accept extrinsic evidence of surrounding circumstances: *Postlethwaite's Appeal,* 68 Pa. 477; *McGlathery's Estate,* 311 Pa. 351, 166 A. 886; *Schmick Estate,* 349 Pa. 65, 36 A. 2d 305; *Walker Estate,* 376 Pa. 16, 101 A. 2d 652.

We cannot profitably add to what President Judge KLEIN said in his opinion affirming the adjudication of the auditing judge, viz: "The testatrix had never married and when she died, in 1902, she was regarded as one of Philadelphia's richest women. In her will she made substantial and adequate provision for all of the persons who had any claim upon her generosity, particularly her adopted daughter and her children, and her nieces and nephews, the children of her brother, Edward N. Benson, to whom she left her residuary estate in addition to large pecuniary legacies.

"There can be no doubt that the testatrix was an extremely charitable and devout Christian woman. Her charitable interests were extensive and widely diversified. She bequeathed gifts of varying but considerable amounts to more than fifty separate and distinct eleemosynary institutions whose work encompassed almost the entire range of human benevolence.

"A study of this record, however, leaves little question that of all her many interests, her own church was nearest to her heart. She participated in the separation movement that brought the Reformed Episcopal

Church into being. She devoted a great deal of her time to the many activities of the church and assisted it in every possible manner. Over a period of years she made many substantial contributions to it and was obviously one of the real stalwarts of this denomination.

"To accept now, fifty years after testatrix's death, the contention of the residuary legatees that she intended all benefits, which 'her church' had been receiving under the will, to come to an end and that the corpus of this trust should be diverted from her church and turned over to them, would, indeed, do violence to testatrix's testamentary plan. This is particularly true in view of the fact that the residuary legatees and their heirs are all collateral relatives, many of whom were not even in being when decedent died.

"We all agree with the Auditing Judge that by 'the parties entitled thereto' testatrix meant 'the parties entitled to the income therefrom' and that Christ Memorial Church is now entitled to receive the corpus of this trust."

The *form* of the award to appellee was made with concurrence of its counsel and is of no concern to appellant.

The decree is affirmed at the cost of appellant.