## Cattell Estate

*Pepper, Bodine, Frick, Scheetz & Hamilton,* for accountants.

*Joseph L. McGlynn, Jr.,* and *John A. Erickson,* for United States of America.

*Rawle & Henderson,* for executor, ancillary administrator, c. t. a., of the estate of Esther Cattell Schmitt, deceased, and claimants.

*Richard Nix, Jr.,* for Commonwealth.

SHOYER, J., January 26, 1959.—This trust arose under item seven of the will of Henry S. Cattell, who died March 12, 1916, whereby testator gave the residue of his estate, in trust, to pay the net income therefrom to his daughter, Esther Cattell (later Schmitt), for life, and upon her death, to distribute the principal to such persons as she by will might appoint. In default of testamentary appointment by his daughter, testator gave the principal of the trust to her issue, per stirpes, and provided that in default of appointment and her death without issue, that the principal be retained in further trust for payment of certain specified annuities out of the income, and of certain legacies out of principal. Further, in such event, he provided that the balance of principal be retained in trust, the income therefrom to be applied "in sending or assisting to send worthy white children (under 21 years of age) of the City of Philadelphia, of Protestant

parentage and American birth, to the country or sea shore for suitable vacations."

A copy of the will is annexed.

The accounting is of the fund awarded to the accountants in trust for Esther Cattell Schmitt by the adjudication of Boland, J., filed December 19, 1949, and was filed by reason of her death.

Testator's daughter, Esther Cattell Schmitt, died February 11, 1955, a resident of Biarritz, France, without issue, leaving a will dated November 12, 1954, registered in the "Civil Records" of Bayonne on February 15, 1955, as "F° 47—Case 879".

By the terms of her will Esther Cattell Schmitt gave "the totality of all of my property personal and real in full ownership [later limited to property in the United States and excluding her interest in the estate of her deceased husband] to the Republic of the United States of America," and then subjected the gift to payment out of income, and tax free, of the following legacies: $500 per month to Lucienne Guerin, for life, and upon her death, to her daughter Renee, for her life; $500 per month to Leopold Dassie, for life, and upon his death, to his wife, Jeanne, for her life, and upon the death of the survivor, to pay their grandson, Gerard Laumond, $200 per month "until the end of his studies;" $500 per month to Raymond Ducoudre, for life; and of the balance of "these revenues after payment of the above legacies" one-half "shall be employed by the American Government to recompense a young American painter, the most deserving," and of "the other half of the remainder of these revenues" she gave one-third to the Bureau de Bienfaisance of the City of Biarritz, one-third to the Association Diocesaine of Bayonne and one-third to the Congregation des Petites Soeurs des Pauvres of Biarritz.

A translation of the Schmitt will, duly authenticated, was submitted and will be found annexed.

Ancillary letters of administration, c. t. a., in the estate of Esther Cattell Schmitt were granted by the Register of Wills of Philadelphia County to J. Welles Henderson on May 7, 1956.

By decree dated February 13, 1957, John E. Littleton, Esq., was appointed trustee ad litem to represent all unascertained interests.

Several questions arise with respect to the appointive fund.

Was the fund validly appointed by the will of Esther Cattell Schmitt? As long ago as 1870 it was held in Bingham's Appeal, 64 Pa. 345, 351: "Whether a power contained in a Pennsylvania will over Pennsylvania property has been duly executed, is evidently a question of Pennsylvania law, and not that of a foreign country having no jurisdiction." Since that time the question seems to have been definitely settled. In Barton Trust, 348 Pa. 279, 281, it was held: "In order to determine whether the residuary clause constituted an exercise of the power it is first necessary to decide by the law of what state that question is governed. In executing a power of appointment the donee disposes of the estate as that of the donor, the appointment being referred back to the instrument which created the power as if it had been actually embodied therein, and it is no doubt because of this principle that it has been uniformly held that the proper and effective exercise of a power of appointment is, in the case of personalty, controlled by the law of the donor's domicile at the time of the creation of the trust." Likewise, in O'Reilly Estate, 371 Pa. 349, it was held while the law of the domicile applies generally to the interpretation of the donee's will, the exercise of a power of appointment created by the will of a Pennsylvania donor in the

case of personalty is interpreted by the law of the donor's domicile at the time of the creation of the trust and not by the donee's domicile at the time the power is exercised. In Windolph Trust, 374 Pa. 81, the court held that the exercise and interpretation of a power of appointment created by the donor who was domiciled in Pennsylvania is governed by the law of Pennsylvania.

By her will the donee expressly gave "the totality of all of my property personal and real" to the United States of America, and then excepted therefrom "all property and cash which may exist in France," which she specifically gave to the Bureau de Bienfaisance of the City of Biarritz, and further excepted "all property and cash coming from the estate of Albert Felix Schmitt, my husband," which she specifically bequeathed to certain other legatees. Consequently, the legacy to the United States of America constituted a gift of the donee's residuary estate, which, by the Act of June 4, 1879, P. L. 88, the statute in force at the donor's death, as well as by the Wills Act of April 24, 1947, P. L. 89, 14 (14), 20 PS §180.14, included the fund over which Esther Cattell Schmitt had power of appointment and operated as an exercise of such power.

The will of the donee was admitted to probate at the donee's domicile and meets the requirements of our statute of wills. In fact it was also admitted to probate in this jurisdiction and ancillary letters of administration c.t.a. were granted in the donee's estate by the register of wills. In my opinion the will of Esther Cattell Schmitt constitutes a valid exercise of the power of appointment granted to her by the will of her father, Henry S. Cattell, and I so hold. John E. Littleton, Esq., the trustee ad litem, made an exhaustive research of the law on this subject and he is in accord with this conclusion. His report and supple-

mental report, which were most helpful to the court, will be found annexed.

What estate does the United States acquire in the fund under the will of Esther Cattell Schmitt? She bequeathed the residue of her estate, which included the fund under Pennsylvania law, "in full ownership" to the United States, subject to certain legacies to named individuals and charities. The phrase "in full ownership" is equivalent, in my opinion, to "absolutely" or other similar expressions which designate an estate in fee simple. There is nothing in the language of the will which indicates that the donee intended the United States to receive less than an absolute estate charged with payment of the legacies.

Are the legacies charged upon the fund payable out of principal, or income, or both? While the donee gave the residue of her estate to the United States, in the first instance, "subject to the following legacies," she expressly provided that "the payment . . . . of the above annual and life income . . . . shall be made from the *income* of the property composing the estate left to the Government of the United States of America" (italics supplied). She limited payment of the annuities expressly to income. These annities aggregate $18,-000 per annum, and counsel for the accountant states that the income of the fund, under the Cattell will and the Schmitt deed of trust appointed by the donee, is insufficient to pay the annuities in full. It will be necessary, therefore, to segregate the funds in their entirety for payment of the annuities and that the annuities abate proportionately to the extent that the income of the fund is insufficient to pay them in full: Fiduciaries Act of April 18, 1949, P. L. 512, sec. 803, 20 PS §320.803; Pusey Estate, 370 Pa. 572.

Until the income of the fund should exceed the amount required to pay the annuities, no "balance re-

maining from these revenues after payment of the above legacies" will be available either "to recompense a young American painter" or for the benefit of the French charities named in the donee's will. It is unnecessary for me, therefore, to decide at this time whether the gifts for the American painter and for the French charities terminate upon the death of the last survivor of the annuitants. Nor is it necessary at this time for the United States to formally accept the gift since the entire fund must be segregated and held for the benefit of the annuitants. If the income of the Cattell and Schmitt trusts should accumulate to the sum of $6,000 in excess of the amount required for the annuities, the accountant is directed to file an account in order that the question of distribution to the French charities may be decided, provided appropriate steps have been taken by the United States to give effect to the gift for the benefit of an American painter.

To protect the interest of the United States in the fund, it is imperative that it be kept within the jurisdiction and control of this court. It does not appear that any portion of the fund is required for payment of the donee's creditors at the domicile, nor has any claim been presented for such purpose.

While in other circumstances the fund might be awarded to the ancillary administrator, c.t.a., of the donee's estate to be included in his account and reawarded to a trustee appointed to carry out the will of the deceased donee, in the interest of economy and to avoid circuity, the ancillary administrator, with the consent of the United States, has proposed that the fund remain in the hands of the accountant for the uses and purposes of the will of the deceased donee. Accordingly, the fund will be reäwarded to the accountant in accordance with the agreement of the parties in interest. . . .

And now, January 26, 1959, the account is confirmed nisi.