489 A.2d 862

**ESTATE OF Francis A. McKENNA a/k/a Rev. Francis A. McKenna, Deceased.**

**Appeal of Robert KEATING.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1984.

Filed March 8, 1985.

John A. Prodoehl, Jr., Media, for appellant.

Before CAVANAUGH, TAMILIA and HOFFMAN, JJ.

CAVANAUGH, Judge:

Reverend Francis A. McKenna died on December 21, 1981, leaving a last Will and Testament dated February 15, 1979. Under item SECOND of his Will, the Testator bequeathed $2,000.00 and his chalice to the Society for the Propagation of the Faith. He also bequeathed $5,000.00 to his friends, William and Eleanor Casey, under item THIRD, and $10,000.00 to Oliver Keating under Item FOURTH. In item FIFTH, Father McKenna gave and bequeathed "all of my personal property of whatever kind and wherever located to my grandnephew, Robert Keating ..." In Article SIXTH he directed that all of his residuary estate was "to be divided equally between the Sacred Heart Cancer Home

of Philadelphia, Pennsylvania [and] the Little Sisters of the Poor of Philadelphia, Pennsylvania". [1]

Father McKenna's estate amounted to approximately $169,000.00 and consisted mainly of securities such as savings certificates, United States Treasury Bonds and cash. The only items of tangible personal property listed in the inventory filed with the Register of Wills consisted of his 1977 Plymouth Volare automobile valued at $2,300.00 and his chalice valued at $200.00. The decedent owned no real estate at the time of his death or when he executed his last will in 1979.

The Executor, Reverend John J. Kilgariff, filed his first and final account with the Orphans' Court Division of the Court of Common Pleas of Delaware County and the account was stated to September 16, 1982. The statement of proposed distribution requested that $2,000.00 be paid to the Society for the Propagation of the Faith and that $10,000.00 be awarded to Oliver Keating.[2] It was further requested that personal property consisting of the 1977 Plymouth Volare be awarded to Robert Keating.[3] The statement concluded with the request that one-half of the residuary estate be awarded to Sacred Heart Cancer Home a/k/a Sacred Heart Free Home For Incurable Cancer and one-half to the Little Sisters Of The Poor a/k/a Little

1. Article NINTH of Father McKenna's will provided:
 NINTH: My Executor is directed within thirty (30) days after my death to secure all stocks, bonds and other types of securities which are held in my name and are located in a safe deposit box No. 17 at Industrial Valley Bank at State and Sproul Roads, Springfield, Pennsylvania. The proceeds of the sale of said stocks, bonds and securities are at once to be deposited in my savings account with the P.S.F.S. Bank in order to make the necessary cash disbursements aforementioned.

2. The statement of proposed distribution does not refer to the chalice that was bequeathed to The Society for the Propagation of the Faith and the account does not indicate that it was distributed to the Society. If this has not already occurred, the chalice should be given to The Society for the Propagation of the Faith.

3. The bequest of $5,000.00 to William F. Casey and Eleanor Casey lapsed as both beneficiaries predeceased the testator and the anti-lapse provision of 20 Pa.C.S. § 2514 does not apply to them.

Sister's Holy Family Home For The Aged. Audit notice letters were sent to all beneficiaries and the Attorney General of Pennsylvania as parens patriae. In the statement of proposed distribution the executor alleged that the estate was not subject to Pennsylvania inheritance taxes. Robert G. Keating filed objections to the account and requested that all assets in the estate be distributed to him under article FIFTH of the decedent's will. A hearing was held in the Orphan's Court Division at which time the appellant amended his objections and claimed that instead of being entitled to all of Father McKenna's estate, he was entitled to all of the estate after payment or distribution of the bequests in items SECOND and FOURTH.[4] The court below filed an adjudication dismissing Mr. Keating's objections and directed distribution as follows:

| | |
|---|---|
| Society for the Propogation of the Faith | Chalice and $2,000.00 |
| Robert Keating | 1977 Plymouth Volare |
| Oliver Keating | $10,000.00 |
| Sacred Heart Cancer Home | One-half of the balance of principal and income. |
| Little Sisters Of The Poor | One-half of the balance of principal and income. |

Exceptions were filed to the decree nisi and denied. The account was confirmed absolutely and an appeal has been taken to this court.

We must determine what the testator meant when he bequeathed all of his personal property to the appellant in article FIFTH. The polestar in the interpretation of any

---

4. At the hearing the following colloquy took place between Mr. Obert (counsel for the charities) and Mr. Prodoehl (counsel for the appellant):

MR. OBERT: If your Honor please, for the record and in response to counsel's statement, Robert Keating is claiming the entire estate, one hundred percent, including all of the tangible and intangible assets of the estate and including the chalice which was given to The Society for the Propagation of the Faith.

MR. PRODOEHL: That was a mistake on my part, sir.

MR. OBERT: It is a matter of record.

MR. PRODOEHL: I'm now withdrawing it.

will is the intent of the testator which must be gathered from the entire will. *Benson Estate*, 380 Pa. 213, 110 A.2d 412 (1955). "To ascertain this intent, a court examines the words of the instrument and, if necessary, the scheme of distribution, the circumstances surrounding the execution of the will and other facts bearing on the question." *Sykes Estate*, 477 Pa. 254, 257, 383 A.2d 920, 921 (1978). In the ascertainment of a testator's intent, a clause in a will must not be read in isolation but rather in the context in which it appears. *Zerbey Estate*, 313 Pa.Super. 297, 459 A.2d 1237 (1983). *See also Clark Estate*, 359 Pa. 411, 59 A.2d 109 (1948); *Hill Estate*, 432 Pa. 269, 247 A.2d 606 (1968). Further, in interpreting wills "the law will impute to the testator's words such meaning as under all the circumstances will conform to his probable intention and be most agreeable to reason and justice." *Umberger Estate*, 369 Pa. 587, 592–3, 87 A.2d 290, 293 (1952). When the court can ascertain the intent of the testator with reasonable certainty through examination of the will itself, it generally does not look to matters external to the will. *Kelly Estate*, 473 Pa. 48, 373 A.2d 744 (1977). "Where, however, a court cannot feel such confidence in distributing the estate by reference to the will only, ... it is proper and necessary to inquire into the circumstances of the testator at the time of execution of his will and other evidence which bears on intent." *Taylor Estate*, 480 Pa. 488, 494, 391 A.2d 991, 994 (1978).

Our first inquiry is whether the testator's intent can be ascertained with reasonable certainty from within the four corners of the will. If so, extrinsic evidence would not be admissible to aid in the interpretation of the will. In items SECOND, THIRD, and FOURTH of his will, the testator made specific bequests of sums of money and in item SECOND he also bequeathed tangible personal property, his chalice. In Item FIFTH he bequeathed all of his personal property to his grandnephew, Robert Keating. In item SIXTH he provided that "[a]ll the rest, residue and remainder of my estate" was to be divided equally between two

charities. Decedent owned no real estate when he made an earlier will in 1972 which we shall further discuss, and when he changed it by his last will in 1979. He owned no real estate when he died in 1981. If he intended to bequeath all of his personal property, both tangible and intangible, to his grandnephew, Robert G. Keating, by virtue of item FIFTH, then items SECOND, THIRD, FOURTH and SIXTH of his Will would have no meaning, as there would be nothing left in the decedent's estate to pass under these items. This was the interpretation that the appellant originally gave to the will when he filed objections to the executor's account.

A second interpretation of the will, and the one that appellant now espouses, is that the testator intended to make the bequests in item SECOND, THIRD and FOURTH and it was intended that the appellant should receive all of the rest of the decedent's personal property, including intangible personalty, such as certificates of deposit, cash, stocks and bonds. This interpretation would, in effect, make item FIFTH a residuary clause, since the decedent had no real estate at the time he made his two wills and at his death. This would then nullify the decedent's residuary clause as set forth in item SIXTH of his Will. The court below adopted a third interpretation that it was the intention of the testator to bequeath the gifts of money and tangible personalty set forth in items SECOND, THIRD and FOURTH of his will and further to bequeath to the appellant all of his tangible personal property, other than the chalice which he specifically bequeathed to the Society for the Propagation of the Faith, and the residue of his estate was to pass under item SIXTH to the two charities named therein.

In ordinary circumstances, the reference to all personal property would refer to all the personalty in which the decedent had an interest at the time of his death, whether it is tangible or intangible. Personal property in the ordinary sense includes stocks, bonds and cash. *Lewis Estate*, 407 Pa. 518, 180 A.2d 919 (1962). In fact, personal property generally means anything except real estate. *McGlathery*

*Estate,* 311 Pa. 351, 166 A. 886 (1933). Appellant relies heavily on *Putt Estate,* 67 Schuylkill L.R. 17, 19, (1971) in which the Orphans' Court of Schuylkill County stated:

When testator bequeathed all his "personal property of whatsoever nature and kind and wheresoever located" he used as broad a terminology as he could possibly have used.

In the instant will, however, the use of the term "personal property" was ambiguous and subject to various interpretations. As noted in *Lewis Estate, supra,* while the term personal property generally includes intangible as well as tangible property, it is not always so. In *Lewis* a bequest of "all my personal property except as otherwise specified" was interpreted as including only *tangible* personal property which was not otherwise bequeathed and did not include intangible property, as cash and securities. Similarly, in *Plank Estate,* 63 Dauphin County Rep. 3 (Dauphin County 1952), the reference to personal property in a will was limited to tangible personal property.[5]

In the instant will, the use of the phrase "all of my personal property of whatever kind and wherever located" was ambiguous because of bequests to others of personal property, and the presence of a residuary clause which would have been redundant, had the appellant's interpreta-

---

5. In *Plank Estate, supra,* the testatrix stated "Item V. All my personal property of every kind and description which I shall own at the time of my death, I direct my executor or executrix to do as he or she desires and at his or her discretion." 63 Dauphin County Rep. 4. The will provided that the "remainder of my property" shall be distributed in equal shares among named nieces and nephews. The court noted at page 5.

The phrase 'all my personal property' occurring in the first sentence of Item V, cannot literally and technically mean what it says, for the reason that Items II, III and IV dispose of some personal property, to-wit: an aggregate of $1,800. The phrase 'all of my personal property' certainly does not include this $1,800 given to others. The inconsistency is apparent. And if this inconsistency exists as to cash, why should we assume that it does not exist as to other forms of personal property, save personal effects? Certainly no mention is made of stocks, bonds or securities, a species of property owned by the decedent.

tion of the will prevailed. Every word and clause in a will must be given effect if reasonably possible, and the court cannot ignore language of the testator, except where the language of the entire will demonstrates that the language in question was inadvertently used and did not express the testator's true intent. *Houston Estate*, 491 Pa. 339, 421 A.2d 166 (1980). The use of the term "personal property" may not have been intended to be used in its broadest sense and extrinsic evidence was admissible to show the circumstances existing when the testator made his will.

The court below found that the decedent's will was ambiguous and that it was proper for the scrivener, John J. D'Angelo, Esquire, to testify concerning the testator's intent when he made his will. Mr. D'Angelo had prepared a will for Father McKenna in 1972. In 1979 the testator returned a copy of the will to Mr. D'Angelo with changes made on it and requested that his attorney make the noted changes which he did, and he mailed the new will to Father McKenna, as he told him that he was unable to come into his lawyer's center city law office.

Mr. D'Angelo recalled his conference with Father McKenna in 1972 in connection with the will that he prepared for him at that time. He wanted his nephew, Robert C. Keating, the appellant herein, to have his car, religious books, television and stereo equipment and items of a religious nature. He absolutely did not discuss giving money, bank accounts or securities to his nephew. With respect to the residuary clause, Mr. D'Angelo testified:

A. He indicated to me that he had stocks, bonds and securities and that he wanted those stocks, bonds and securities sold within a short time after his death and to use the money to pay the specific requests [sic] that he had enumerated in the will and to give the rest of the money to the charities that we enumerated in the residuary clause.

Q. At that time they were what charities?

A. The Little Sisters of the Poor which was a favorite charity of his, the Sacred Heart Home for Incurable Cancer which was also a favorite charity and the Holy Redeemer Hospital which he had an affection for at that time.

A. So therefore it was your interpretation that the gifts, that the personal property consisting of the stocks, bonds and other securities were not included in the gift to Robert?

A. That's right.

Q. What, if anything, was to be included in the gift to Robert?

MR. PRODOEHL: Objection:

THE COURT: Overruled.

THE WITNESS: Father McKenna indicated to me that he had a car. He wanted Robert to have that car. He had, I remember we had a discussion about religious books. He wanted him to have those books, his television, his stereo equipment.

BY MR. MOORE:

Q. Did he discuss—

A. Two missals, other items of a religious nature, crucifixes, and I think he told me a special crucifix of his [sic] type. That's what he referred to.

Q. Did he discuss giving money or bank accounts or securities to Robert?

A. Absolutely not.[6]

■ The testimony of the scrivener was properly admitted. Where language of the testator is unimpeached, but equivocal or ambiguous, declarations of the testator's intent are admissible for purposes of interpretation. *Logan v. Wiley*, 357 Pa. 547, 55 A.2d 366 (1947). Declarations alleged to have been made by the testator to the scrivener

---

**6.** Father McKenna's will of February 25, 1972, divided his residuary estate equally between Sacred Heart Cancer Home, Little Sisters of the Poor and Holy Redeemer Hospital. In the will in question, Holy Redeemer Hospital was deleted.

of his will are not admissible to alter or add to the terms of a will where a will is clear and unambiguous. *Kelly Estate,* 473 Pa. 48, 373 A.2d 744 (1977). If the will is ambiguous on its face, the court may look to extrinsic evidence to aid in interpretation. *MacFarlane Estate,* 313 Pa.Super. 397, 459 A.2d 1289 (1983). In that case the testator left "all my tangible personal property" to his wife. He bequeathed his residuary estate to the Pittsburgh National Bank, as trustee, which contended that the decedent's gold and silver coins valued at some $19,000.00 should be placed in a trust established under the will. The argument was that the testator considered the coins to be an investment or cash and therefore constituted intangible personal property. We held that since the testator's language was not ambiguous on its face, oral testimony could not be used to prove the testator's intent, and the coins were bequeathed to testator's wife and did not pass into the trust. The court held that there was no doubt but that gold and silver coins were included within the meaning of "tangible personal property". In our case, the problem is whether intangible personal property is included within the term "personal property" as used in testator's will in item FIFTH and we have seen that the will is ambiguous in this respect.[7]

 We are satisfied that the circumstances surrounding the testator's will clarify the ambiguity found in the use of the phrase "all of my personal property" and that he intended the appellant to receive all his tangible personalty, other than his chalice, and that the residue of his estate, which is clearly the bulk of his estate, was to go to the two charities named in item SIXTH.

Order affirmed.

7. This case illustrates the need of counsel in drafting a will to use clear and precise language to set forth the testator's intent. If counsel had merely stated in item SIXTH that testator bequeathed all of his tangible personal property, not otherwise disposed of by the will, to his grandnephew, Robert Keating, all of the difficulties in interpreting this will that we have encountered would have been avoided.