431 A.2d 208

ESTATE OF Ida J. DULLES, Deceased.

Appeal of Frank William Harrison DULLES, et al., No. 98.

Appeal of GIRARD BANK, Trustee, No. 103.

Appeal of Gloria Dean DULLES, No. 104.

Supreme Court of Pennsylvania.

Argued Jan. 27, 1981.
Decided July 2, 1981.

182

---

John R. Suria, John F. Meigs, Maurice D. Lee, III, Martha R. Hurt, Philadelphia, for appellant in No. 98.

William C. Bullitt, David W. Maxey, Cuthbert H. Latta, Philadelphia, for Gloria Dean Dulles.

Minturn T. Wright, III, Robert L. Freedman, Louisa Smith Mygatt, Philadelphia, for Girard Bank.

## OPINION OF THE COURT

ROBERTS, Justice.

This is a dispute among the three grandchildren of settlor Ida J. Dulles, as well as settlor's trustee, concerning the right of one of the grandchildren, born out of wedlock, to receive income from settlor's trust. The Orphans' Court Division of the Court of Common Pleas of Philadelphia held that the grandchild born out of wedlock has been entitled to share trust income equally with the other two grandchildren since December 25, 1971, when, under the terms of the trust, the exclusive right of settlor's "grandchildren" to trust income commenced. We hold that, although all three grandchildren are to share future trust income equally, on this record the grandchild born out of wedlock may recover only the amount of past trust income which settlor's trustee, by stipulation of the parties, has reserved pending final adjudication of the claims of the grandchild born out of wedlock. Accordingly, the decree is modified and, as modified, affirmed.

### I. *Background*

Settlor died on November 7, 1949, leaving a will dated July 22, 1943, and several codicils, the last dated May 13, 1949. The will and codicils were drafted with the assistance of counsel. By paragraph SEVENTH of the will, settlor placed her residuary estate in trust. The trust is active, and is to remain so until twenty-one years after the death of the last of settlor's "descendants" born in settlor's lifetime.

Settlor directed her trustees to pay income from the paragraph SEVENTH residuary trust to her son, Harrison Dulles, for his life. Additionally, settlor directed that, during her son's life, trust income was to be paid to those grandchildren who had reached the age of twenty-one. For the period when the eldest of settlor's grandchildren was between the ages of twenty-one and twenty-five, those grandchildren who had reached the age of twenty-one were to share equally in ten percent of trust income. For the period when the eldest was between twenty-five and thirty-five, those grandchildren over twenty-one were to share

fifteen percent of the income. Settlor further provided that, upon the death of her son, "my grandchildren will share in the income under the next succeeding paragraph." That paragraph provides:

"(c) Upon the death of my said son, until the termination of the Trust, to pay over the balance of the net income, quarter-yearly, to and among my descendants living at such times of quarterly distribution, share and share alike, per stirpes, upon the principle of representation."

Harrison Dulles was the father of three children, Frank Dulles, Gloria Dulles, and Florence Dulles. Frank Dulles was born in 1940 of Gweneth Dulles, Harrison Dulles' first wife. Gloria Dulles was born in 1944, out of wedlock, of Marguerite Bonnarde. Florence Dulles was born in 1959, of Clelia Dulles, Harrison Dulles' second wife. (Harrison Dulles and his first wife had been divorced in 1949.)

A fourth child, Henry Dulles, was born in 1944 of Harrison Dulles' first wife. However, by codicil to her will, settlor limited participation of the first wife's children to Frank Dulles. Although settlor specified no reason for this limitation, it appears that settlor shared her son Harrison Dulles' belief, expressed by will, that he was not Henry Dulles' father.

In 1961, settlor's eldest grandchild, Frank Dulles, reached the age of twenty-one. Settlor's trustees filed an account in 1962 and, upon confirmation, Frank Dulles began to share trust income with his father. No similar allocation of trust income was made in 1965, when Gloria Dulles, settlor's grandchild born out of wedlock, reached twenty-one. Frank Dulles thus was the sole grandchild of settlor to share trust income with settlor's son.

Settlor's son Harrison Dulles died on December 25, 1971, leaving a will dated March 5, 1956. In his will, Harrison Dulles acknowledged that Gloria Dulles was his daughter. In May of 1972, trustees of settlor's trust filed an account covering the period since the 1962 accounting. The trustees proposed to distribute trust income exclusively to Frank

Dulles and Florence Dulles, settlor's grandchildren born in wedlock. Although the trustees recognized the existence of Gloria Dulles, they maintained that she was barred from sharing in trust income by existing "canons of construction," then contained in Section 14(7) of the Wills Act of 1947, Act of April 24, 1947, P.L. 89, as amended, formerly 20 P.S. § 180.14(7). Section 14(7) provided that, absent an expression of intent to the contrary,

"in construing a will making a devise or bequest to a person or persons described by relationship to the testator or to another, a person born out of wedlock shall be considered the child of his mother and not of his father . . . ." [1]

It appears that the trustees nevertheless began to reserve a portion of trust income against the possibility that Gloria Dulles might be entitled to share in the trust.

[1] Section 14(7) embodied then-existing case law. See *Taylor Estate*, 357 Pa. 120, 53 A.2d 136 (1947), and *Appel v. Byers*, 98 Pa. 479 (1881).

In 1972, the Legislature codified section 14(7) at 20 Pa.C.S. § 2514(8), without material revision. However, on November 26, 1978, the Legislature amended 20 Pa.C.S. § 2514(8) to provide that, absent contrary intent,

"[i]n construing a will making a devise or bequest to a person or persons described by relationship to the testator or to another, a person born out of wedlock shall be considered the child of the natural mother and also of the natural father if paternity of the natural father has been determined pursuant to the provisions of section 2107 (relating to persons born out of wedlock)."

Section 2107 provides for the following means of determining paternity:

"(1) If the parents of a child born out of wedlock shall have married each other.

(2) If during the lifetime of the child, the father openly holds out the child to be his and receives the child into his home, or openly holds the child out to be his and provides support for the child which shall be determined by clear and convincing evidence.

(3) If there is clear and convincing evidence that the man was the father of the child, which may include a prior court determination of paternity."

Although generally effective immediately, amended 20 Pa.C.S. § 2514(8) "shall not apply to wills . . . executed prior to [November 26, 1978,] or to rights from and through a child's father if the father had died prior to [November 26, 1978]." Act of November 26, 1978, P.L. 1269, § 5, 20 Pa.C.S.A. § 2514 Note (Supp. 1980).

Acting on the representation that Gloria Dulles had been given notice of the audit, and had failed to appear, the auditing judge (Saylor, J.) by nisi adjudication dated December 14, 1972, concluded that Gloria Dulles and her issue were "precluded by the Statute [(section 14(7))] as descendants of testatrix, and that they [had] no interest in either the income or principal of the trust." However, the parties agree that Gloria Dulles was not given notice of the audit and that the auditing judge was erroneously informed to the contrary.

Following the nisi adjudication, the trustees discontinued the practice of holding trust income on behalf of Gloria Dulles, and commenced to distribute trust income exclusively to Frank Dulles and Florence Dulles. Gloria Dulles did receive a share of the estate of her father Harrison Dulles, who had provided for her by his will. Harrison Dulles' will specifically excluded Frank Dulles, "because he has been amply provided for by the will of my mother . . . ."

In May of 1974, after learning of settlor's trust for the benefit of "grandchildren," Gloria Dulles advised surviving trustee Girard Bank that she believed she was entitled to trust income. Although the record does not reflect the precise scope of the claim asserted, it does indicate that in June of 1974 Girard Bank began to place one-third of trust income in reserve pending disposition of Gloria Dulles' claim. In November of 1974, Girard Bank filed an account for the two-year period since its previous account had been confirmed. Girard proposed to continue to exclude Gloria Dulles from trust income, on the basis of the same "canon of construction" relied upon in the previous accounting.[2] Gloria Dulles took the position that this canon was unconstitutional.[3] An evidentiary hearing followed, at which Gloria Dulles proved to the satisfaction of the auditing judge

2. See supra note 1.

3. Proper notice of the constitutional challenge was served on the Attorney General pursuant to Pa.R.Civ.Proc. 235. The Attorney General has not filed a brief in this Court on the constitutional issue presented.

(Silverstein, J.) that she had not received notice of the previous audit.

In November of 1976, the auditing judge confirmed the account nisi and rejected Gloria Dulles' constitutional challenge. The auditing court also held that, even if the canon of construction were constitutionally infirm, the canon had no application. According to the auditing judge, settlor's exclusion of Henry Dulles, son of Harrison Dulles' first wife but apparently not the son of Harrison Dulles, established that settlor did not intend children born out of wedlock to share in trust income. Gloria Dulles filed timely exceptions alleging error in the "fail[ure] to award [her] one-third of the income .... "

On April 26, 1977, before Gloria Dulles' exceptions were decided, the Supreme Court of the United States decided *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977). *Trimble* held unconstitutional as violative of equal protection a state intestacy statute which excluded a child born out of wedlock from participation in the estate of the child's father, even though the father had acknowledged paternity. On September 12, 1977, in light of *Trimble*, the orphans' court en banc dismissed Gloria Dulles' exceptions without prejudice and referred the matter to the auditing judge for further consideration.

On December 29, 1977, while the matter was under further consideration, Gloria Dulles filed a petition pursuant to 20 Pa.C.S. § 3521, seeking review of the 1972 nisi adjudication entered on the accounting following Harrison Dulles' death. The petition alleges that, because Gloria Dulles was not given notice of the audit, the adjudication is not binding on her. Thus the petition claims that, under the terms of the trust in effect while settlor's son was still living, trustees should have paid Gloria Dulles a portion of trust income as early as 1965, when she had reached the age of twenty-one. The petition also restates Gloria Dulles' claim to a one-third share of trust income since her father's death. Although preliminary pleadings followed, no responsive pleadings were filed. The proceedings have been continued pending the outcome of this appeal.

On July 27, 1978, the auditing judge entered a supplemental adjudication affirming the previously-entered nisi adjudication. *Trimble* was distinguished primarily on the ground that, by her will, settlor "did not intend any illegitimate offspring of her children or grandchildren to take a share in her estate." Exceptions of Gloria Dulles to this adjudication reiterated the claim of error in the failure to award her one-third of the trust income. The exceptions also included the contention presented in the intervening petition for review, that Gloria Dulles has been entitled to a portion of trust income since 1965, when she reached twenty-one.

On October 12, 1978, the parties entered into a stipulation concerning the allocation of trust income during the remainder of litigation. The parties agreed:

(1) Girard would continue to make provision for Gloria Dulles' original claim by holding a one-third share of trust income, as it had done since June of 1974, one month after the claim was asserted;

(2) Girard would hold an additional one-sixth share of trust income, a practice begun in February of 1978, to cover any trust income to which Gloria Dulles might be entitled between 1965 (when she reached twenty-one) and 1971 (her father's death), as well as between 1971 and June of 1974 (when Girard began to hold one-third of trust income); and

(3) The remaining income would be paid to Frank Dulles and Florence Dulles.

By final decree dated February 13, 1979, a majority of the Orphans' Court Division sustained Gloria Dulles' exceptions making claim to one-third of the income earned after December 25, 1971, the date of Harrison Dulles' death. Judge Klein, joined by Judges Gutowicz and Bruno, rejected the auditing judge's assessment of settlor's intent. Judges Klein, Gutowicz, and Bruno believed that settlor's exclusion of Henry Dulles indicates that settlor "was more interested in favoring her blood line than she was in any formal legal presumption of legitimacy." Turning to the canon of construction embodied in section 14(7) of the Wills Act of 1947,

later codified at 20 Pa.C.S. § 2514(8), Judge Klein relied on *Trimble* and concluded:

"It seems to follow logically that if the state cannot discriminate against a child born out of wedlock in a case of intestacy it is also barred from such discrimination if it seeks to control the method of distribution of the estate of a decedent who died testate, unless the statutory classification bears some rational relationship to a legitimate state purpose. In our opinion, Section 14(7) of the Wills Act of 1947 and Section 2514(8) of the Probate, Estates and Fiduciaries Code, mandating an interpretation of a will which discriminates against an illegitimate child by regarding him as the child of his mother and not of his father, do not bear any rational relationship to a legitimate state purpose and are therefore constitutionally infirm to the same degree as the statute dealing with intestate succession."

29 Fiduc.Rep. 141, 149–50 (1979) (footnote omitted). As to Gloria Dulles' exceptions seeking income from 1965 to 1971, the Orphans' Court Division dismissed without prejudice those of Gloria Dulles' exceptions seeking income from 1965 to 1971, permitting her to proceed by the pending petition for review.[4]

All the parties have appealed from the final decree. Frank Dulles and Florence Dulles, appellants at No. 98 January Term, 1979, contend that Gloria Dulles is entitled to no trust income. Trustee Girard Bank, appellant at No. 103 January Term, 1979, contends that by permitting Gloria Dulles to recover income as early as December 25, 1971 the court en banc has unfairly subjected it to possible surcharge. Gloria Dulles, appellant at No. 104 January Term, 1979, contends that the court en banc should have sustained her exceptions seeking income from 1965 to 1971.

4. Administrative Judge Pawelec filed a concurring opinion. Judges Shoyer and Silverstein (the auditing judge) filed opinions dissenting from that part of the final decree sustaining Gloria Dulles' exceptions making claim to income earned after December 25, 1971.

## II. *Appeal of Frank Dulles and Florence Dulles*

■    There can be little doubt that, under *Trimble v. Gordon*, supra, the canon of construction which would operate to exclude Gloria Dulles is constitutionally flawed. A State may not "attempt to influence the actions of men and women by imposing sanctions on the children born of their illegitimate relationships." *Trimble,* 430 U.S. at 769, 97 S.Ct. at 1464. And, because it is undisputed that Harrison Dulles is Gloria Dulles' father, "the State's interest in the accurate and efficient disposition of property at death would not be compromised in any way by allowing [the] claim . . . ." *Id.,* 430 U.S. at 772, 97 S.Ct. at 1466.

Although *Trimble* involved a state intestacy statute, while here there is involved a "canon of construction," in both cases the judgment of the sovereign is interposed to effectuate distribution of the decedent's estate. As Judge Klein observed,

"[a] person has the right to write a will disposing of his property at death. If he fails to do so, the state steps in and writes a will for him by means of an intestate act and directs the manner in which his estate shall be distributed, designating the persons who shall receive the property and the proportions they are to receive. If a person writes a will but fails to express his intent clearly, or fails to make a complete distribution of his property, or otherwise runs counter to some rule of law, the state also steps into fill the gap through a statutorily enacted rule of construction which mandates the manner of distribution. In both cases the state and not the decedent dictates the method of distribution."

29 Fiduc.Rep. at 148. Under *Trimble,* the orphans' court en banc properly held unconstitutional the canon of construction which would exclude Gloria Dulles from the enjoyment of trust income.[5]

5.    Nothing in *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), requires a contrary conclusion. There, the Court upheld a New York statute allowing a child born out of wedlock to inherit from his father who died intestate only if a court of competent

Like the auditing judge, settlor's grandchildren born in wedlock believe that "canons of construction" are inapposite, on the theory that settlor manifested an intent to exclude children born out of wedlock. According to these grandchildren, settlor's intent is manifested most strongly by settlor's deliberate exclusion of Henry Dulles, son of Harrison Dulles' first wife but apparently not the son of Harrison Dulles. Additionally, grandchildren born in wedlock believe that disputed provisions of settlor's will should be "interpreted according to the law in effect at testator's death," *Collins Estate*, 393 Pa. 195, 200, 142 A.2d 178, 181 (1958), thus imputing to settlor the intent to exclude a child born out of wedlock such as Gloria Dulles, who attempts to take through her father.[6] We are not persuaded by either contention.

A canon of construction is not avoided by the mere allegation of a particular intent, or even the existence of a remote inference. Rather, as our cases make clear, "[t]he intent of testator must appear with reasonable certainty, such that there can be little doubt of his intent." *Sykes Estate*, 477 Pa. 254, 257, 383 A.2d 920, 921 (1978). Accord, e.g., *Kehler Estate*, 488 Pa. 165, 167, 411 A.2d 748, 750 (1980). Here, although settlor's exclusion of Henry Dulles is consistent with a desire to exclude grandchildren born out of wedlock, settlor's exclusion of Henry Dulles is equally consistent with a desire to benefit only those grandchildren related to settlor by blood. If settlor had indeed intended to benefit those grandchildren related by blood, it would follow that settlor intended to favor Gloria Dulles, who was fathered by her son, even though out of wedlock. Because this latter possibility is incompatible with the view that settlor

jurisdiction has, during the father's lifetime, entered an order of filiation declaring paternity in a proceeding commenced during the mother's pregnancy or within two years of the child's birth. However, the canon of construction here, like the statute in *Trimble*, provides no means for a child born out of wedlock to establish eligibility to benefit from the father's estate.

6. See supra note 1.

intended to exclude all grandchildren born out of wedlock, settlor's exclusion of Henry Dulles can support no conclusion regarding her intent. The requisite certainty in favor of either view is lacking.[7]

By attributing to settlor the intent to exclude those who would be excluded under canons of construction in effect when she executed her will, settlor's grandchildren born in wedlock have attempted to make substantially the same "presumed intent" contention as was advanced in *Trimble* in support of the state intestacy statute and discredited by the Supreme Court. There, where an intestacy statute excluding a child born out of wedlock from taking through a father was challenged, it was argued that the intestacy statute "mirrors the presumed intentions of the citizens of the State regarding the disposition of their property at death," and that the father's failure to make a will "shows his approval of that disposition." *Trimble*, 430 U.S. at 774, 97 S.Ct. at 1467. Although the contention had not been relied upon by the state courts, and therefore was not a matter for the Court to decide, Justice Powell, speaking for the majority, dismissed the contention:

"Even if one assumed that a majority of the citizens of the State preferred to discriminate against their illegitimate children, the sentiment hardly would be unanimous. With regard to any individual, the argument of knowledge and approval of the State law is sheer fiction. The issue therefore becomes where the burden of inertia in writing a will is to fall. At least when the disadvantaged group has been a frequent target of discrimination, as illegitimates have, we doubt that a State constitutionally may place the burden on that group by invoking the theory of

7. We are unwilling to accept as true the allegations of settlor's grandchildren born in wedlock that settlor "disliked" Gloria Dulles. No such evidence appears in settlor's will, the orphans' court made no finding to that effect, and this Court does not sit as a fact-finder. See, e.g., *Reed v. Universal C.I.T. Corp.*, 434 Pa. 212, 217, 253 A.2d 101, 104 (1969).

'presumed intent.'   See *Eskra v. Morton* [524 F.2d 9, 12–14 (7th Cir.1975)] (Stevens, J.)."

*Trimble*, 430 U.S. at 775 n.16, 97 S.Ct. at 1467 n.16.

■ As in *Trimble*, it cannot be said that testators whose wills fail to contain specific provisions are unanimous in the sentiment to discriminate against children born out of wedlock.  Because settlor has failed to write a specific provision governing Gloria Dulles' right to share in trust income, we are left with the decision made by the sovereign, in the form of a canon of construction, to place upon Gloria Dulles the "burden of inertia" and thereby exclude her.  That canon is constitutionally infirm, and Gloria Dulles must prevail on this issue.

III.   *Appeal of Girard Bank and Appeal of Gloria Dulles*

■ Our sole remaining task is to fashion an appropriate remedy.  There is no dispute that if, as we conclude, Gloria Dulles should prevail, she should share trust income equally with those two grandchildren of settlor born in wedlock, as of this Court's decision until termination of the trust.  See *Biddle Estate*, 487 Pa. 616, 410 A.2d 782 (1980) (adopted child previously excluded from trust income permitted to participate in distributions of income after decision in *Tafel Estate*, 449 Pa. 442, 296 A.2d 797 (1972), which changed presumption regarding bequests to "children"); *DeRoy Estate*, 481 Pa. 403, 392 A.2d 1355 (1978) (adopted child allowed after *Tafel* to claim principal of terminating trust despite earlier pre-*Tafel* adjudication excluding child from income of same trust).  See also *Sewell Estate*, 487 Pa. 379, 409 A.2d 401 (1979) (surcharge imposed where, despite sufficient knowledge of existence of adopted child, trustees continued to exclude adopted child from enjoyment of trust income after *Tafel* decision).  What is in dispute is whether Gloria Dulles is entitled to trust income earned before today's decision.[8]

8.   Unlike the orphans' court en banc, we deem it inappropriate to postpone decision on Gloria Dulles' claim to trust income earned from 1965 to 1971.  See Pa.Orph.Ct.Rule 2.1, which provides:

■ Gloria Dulles has, of course, been impermissibly excluded from the benefits of the trust her grandmother established. However, there are countervailing considerations which must be taken into account so that the most equitable solution can be fashioned. First, there is not the slightest trace of bad faith conduct on the part of the present or any previous trustee, who made payments of trust income pursuant to court decree.[9] Second, it cannot be ignored that grandchildren of settlor born in wedlock have reasonably relied upon their status as beneficiaries in accepting trust income and in planning their affairs.

> "The rules adopted by the Supreme Court regulating the practice and procedure of the Orphans' Courts of this Commonwealth, and the rules adopted by such courts, shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties in interest."

In view of our disposition, we do not address the defense of laches advanced by settlor's grandchildren born in wedlock.

9. Indeed, the record reveals that throughout the present litigation Girard Bank has acted with the utmost caution, and in the best of faith. Although Auditing Judge Saylor's misperception that notice of the 1972 audit had been given to Gloria Dulles is attributable to settlor's trustees, any suggestion of impropriety is belied by the fact that before the 1972 audit the same trustees established a reserve fund on Gloria Dulles' behalf.

We note that, in amending the canon of construction contained in 20 Pa.C.S. § 2514(8), see supra note 1, the Legislature added a new section to Title 20, 20 Pa.C.S. § 3538. Section 3538 provides:

> "A personal representative may administer an estate on the assumption that no person born out of wedlock is entitled to share as a distributee unless the personal representative has knowledge or has received notice that such a person with possible distributee's rights exists. If a personal representative has distributed an estate, or part thereof, in good faith without knowledge of a person born out of wedlock who has rights as a distributee, said distribution actually made shall not impose liability on the personal representative. Except as herein otherwise provided, a person born out of wedlock shall have the same rights in an estate and shall be subject to such time limitations and to such procedures as are applied to any other heir or claimant against an estate."

Our search for the most appropriate remedy fully reflects the principles embodied in 20 Pa.C.S. § 3538.

There are several possible solutions. For example, at one end of the spectrum of possibilities is a determination that Gloria Dulles should share in trust income earned from 1965, when she reached the age of twenty-one, to her father's death in 1971, as well as trust income earned since her father's death. At the other end of the spectrum there is the possible determination that Gloria Dulles should receive only future trust income.

On this record, neither of these extreme solutions is appropriate. Although a ruling permitting Gloria Dulles to recover a share of trust income earned since 1965 would surely compensate Gloria Dulles, such a ruling would wholly ignore the countervailing interests of the present beneficiaries and the trustee. The record fails to disclose the existence of any reserve of funds sufficient to pay Gloria Dulles a sum reflecting the share of trust income she claims since 1965. Thus the burden of an adjudication providing Gloria Dulles with this sum would fall directly on either settlor's grandchildren born in wedlock or trustee Girard Bank, even though no element of bad faith would justify this allocation of the burden. So too, while an adjudication denying Gloria Dulles past income earned since 1965 would alleviate any burden imposed upon grandchildren born in wedlock or Girard, such an adjudication would, on this record, fall unreasonably short of effectuating our holding and the holding of the orphans' court—Gloria Dulles has been excluded from the enjoyment of trust income on the basis of an unconstitutional canon of construction.

There are other possibilities within the range of these extremes. For instance, Gloria Dulles might be permitted to take trust income earned (a) since her father's death in 1971, (b) since confirmation of the account one year later, (c) since Gloria Dulles first asserted her claim in 1974, (d) since the decision in *Trimble v. Gordon,* supra, in 1977, or (e) since the decision of the orphans' court en banc, in 1979. However, each of these possibilities unreasonably, and somewhat arbitrarily, focuses upon a particular event, with little if any regard for the interests of the parties. In an effort to reach

the most equitable solution, we prefer to focus upon the interests of the parties.

In our view, the most appropriate balance is struck by awarding Gloria Dulles that amount of trust income which, pursuant to the parties' stipulation, Girard presently holds in reserve in the event that Gloria Dulles prevails. Surely such an adjudication imposes no hardship upon Girard. So too there is nothing on the record to indicate that settlor's grandchildren born in wedlock have found the stipulation into which they entered to be onerous at any time since its inception in October of 1978. And, although the award of only the reserved funds as of the date of this decision means that Gloria Dulles will not receive all of the trust income she claims, she receives a substantial sum which is just and fair in the circumstances. Pursuant to the "equitable powers" of the orphans' court and in the "interest of justice," 42 Pa.C.S. § 323, see *Damario Estate*, 488 Pa. 434, 412 A.2d 842 (1980), we modify the decree accordingly.

Decree modified and, as modified, affirmed. Costs on the trust.

O'BRIEN, C. J., concurs in the result.