459 A.2d 1237

**ESTATE OF Joseph Henry ZERBEY, Deceased.**

**APPEAL OF Joseph Henry ZERBEY, IV and Harry Zerbey, Exceptants.**

Superior Court of Pennsylvania.

Argued Feb. 23, 1982.

Filed March 25, 1983.

Reargument Denied June 7, 1983.

Petition for Allowance of Appeal Denied Sept. 30, 1983.

David Pittinsky, Philadelphia, for appellants.

J. Brooke Aker, Norristown, for participating parties.

Before CAVANAUGH, McEWEN and HOFFMAN, JJ.

CAVANAUGH, Judge:

This is an appeal from a final decree of the Orphans' Court Division of the Court of Common Pleas of Schuylkill County dismissing exceptions to the court's adjudication which confirmed the trustees' accounts. The court also dismissed the exceptants' petitions for allowance of counsel fee filed by various family members but these exceptions are not part of this appeal.

On August 19, 1932, Joseph Henry Zerbey (hereinafter referred to as testator) who was then seventy-four years of age and possessed of a substantial estate, executed his will. At that time his heirs consisted of three daughters, Frances Zerbey Braun, Elizabeth Zerbey Martz and Mildred Zerbey Lazarus, one son, Joseph Henry Zerbey, Jr., and one grandchild, Joseph Henry Zerbey, III, the son of Joseph Henry Zerbey, Jr. On January 1, 1933, another grandchild of testator was born, Johanna Zerbey Martz, the daughter of Elizabeth Zerbey Martz. The family tree as to issue was thus constituted when testator died on February 2, 1933. After testator's death two more grandchildren were born, Uzal Martz, Jr. (the son of Elizabeth Zerbey Martz) born on October 20, 1934, and Margareta Lazarus (now Margareta Lazarus Paduch) who was the daughter of Mildred Zerbey Lazarus, born on August 12, 1935.

The testator's will under paragraph NINTH(c) and (d) established two trusts referred to in his will as the "Newspaper Trust" and the "Union Hall Trust".[1] The income

1. Paragraph NINTH(c) and (d) provides as follows:

from the two trusts was to be divided into five shares, one share for each of his four children whom he identified by name and one share for his grandchildren "said share to be subdivided among all of my grandchildren in equal shares, including any grandchildren born after my death". Testator also provided that upon the death of any of his children the income from the two trusts was to be divided into equal shares with one share for each of his then living children and one share for his grandchildren.[2] The trusts are to terminate at the death of his last surviving child and the principal is then to be distributed to his living grandchildren in equal shares.[3] The will also provided that if at the death

(c) The income derived from the said "Newspaper Trust" over and above that necessary for the proper maintenance and improvement of the buildings and payment of taxes thereon, the cost of operation of the said trust, and other necessary and proper expenses, shall be divided into five (5) equal shares and the said income shall be distributed at such times as the trustees may deem it advisable, as follows:

To my son, Joseph Henry Zerbey, Jr., one share.

To my daughter, Frances Zerbey Braun, one share.

To my daughter, Elizabeth Zerbey Martz, one share.

To my daughter, Mildred Zerbey Lazarus, one share.

To my grandchildren, one share; said share to be subdivided among all of my grandchildren in equal shares, including any grandchildren born after my death.

(d) The income from the said "Union Hall Trust" over and above that necessary for the proper maintenance and improvement of the buildings and payment of taxes thereon, the cost of operation of the trust, shall be divided into five (5) equal shares and shall be distributed at such times as the said trustees may deem it advisable, as follows:

To my son, Joseph Henry Zerbey, Jr., one share.

To my daughter, Frances Zerbey Braun, one share.

To my daughter, Elizabeth Zerbey Martz, one share.

To my daughter, Mildred Zerbey Lazarus, one share.

To my grandchildren, one share; said one share to be subdivided among all of my grandchildren in equal shares, including any grandchildren born after my death.

2. Paragraph NINTH (g) provides in part:

(g) In the event of the death of one or more of my children hereinbefore named, the number of shares into which the income under clauses "C" and "D" of item nine shall be divided for the purpose of distribution, shall be equal to the number of my then living children at the time of each of said distribution of income and one share for my grandchildren.

3. Paragraph NINTH (g) further provided:

of his last surviving child there were no grandchildren then surviving that the trust should be distributed in accordance with the intestate laws of Pennsylvania.

At testator's death he was survived by his four children and two grandchildren. Joseph Henry Zerbey, Jr., testator's only son died on February 16, 1945 and his son (testator's grandchild) Joseph Henry Zerbey, III died on July 3, 1958. The children of Joseph Henry Zerbey, III, namely testator's great-grandchildren, Joseph Henry Zerbey, IV, and Henry Zerbey are the appellants herein. Testator's daughter, Frances Zerbey Braun, died on October 27, 1975, leaving no issue surviving. Testator's other two children, Elizabeth Zerbey Martz and Mildred Zerbey Lazarus, still survive.

Upon the death of Joseph Henry Zerbey, III, in 1958 at the age of 41 the trustees did not distribute any income among the testator's great-grandchildren but rather continued income distribution with one equal share for each living

In the event of the death of all of my grandchildren before the death of the last of my children, then in that event the number of shares at the time of each distribution of income shall be equal to the number of my then living children.

In the event that one or more of my grandchildren survive all of my hereinbefore named children, then in that event the trustees, upon the death of my last child, shall deliver the said property in the trust, being the principal, interest, income and property free of the said trust, to the living grandchild absolutely or to the said living grandchildren absolutely in equal shares as the case may be.

In the event that all of my grandchildren shall die before the death of all of my children, then, after the death of my last child, the trustees, shall sell and dispose of the property, being the principal of the said trust, at any time within the time permitted by law as the life of a trust and subject to their discretion, and for that purpose I hereby empower and direct my said trustees to sell and dispose of the whole or any part of the real or personal property included in the said trust, either at public or private sale or sales, in such manner and for such price and upon such terms, as to credit or otherwise, as they in their discretion may deem best, without any obligation on the part of the purchasers thereof to see to or be responsible for the purchase money. And when the whole of the property in said trust has been converted into money as aforesaid, the trust fund shall be divided among and be paid to my legal heirs in accordance with the intestate laws of the Commonwealth of Pennsylvania.

child and one equal share for grandchildren. In July, 1980, the appellants presented their claim to the Orphan's Court Division for the first time that they are entitled to their deceased father's share of income.[4]

In this appeal we are involved with the narrow question of whether testator intended to use the term "grandchildren" when referring to income to include issue of a deceased grandchild. Our Supreme Court stated in *Blough Estate*, 474 Pa. 177, 185, 378 A.2d 276, 280 (1977):

> The primary consideration in the construction and interpretation of wills is that the intent of the testator be followed... Absent ambiguity, that intent is to be determined from "the four corners of his will," ... The duty of the court is not to determine what the testator might or should have said in light of subsequent events but, rather, the actual meaning of the words used... Only if the language employed by the testator is ambiguous should the court resort to canons of construction.

*See also Toland Estate*, 495 Pa. 482, 434 A.2d 1192 (1981).

In the instant case there is no difficulty with respect to the term "children". The parties agree that testator intended the term "children" to include only his children and not the issue of his children. The dispute revolves around the term "grandchildren" and whether testator intended to include the issue of deceased grandchildren in the term "grandchildren." In *Ball v. Weightman*, 273 Pa. 120, 123, 116 A. 653, 654 (1922) the Supreme Court stated:

> The term "grandchildren" may or may not embrace great-grandchildren according to the meaning of the testator to be ascertained from an examination of the entire will. *Standing alone it is restricted to children's children, but it may be enlarged by the context so as to embrace great-grandchildren or even more remote descendants.* Where there is something to extend the natural signification of the term "grandchildren" it may include great-grandchildren: *Horn v. Van Schaick*, 3

---

**4.** Joseph H. Zerbey, IV, became *suri juris* in September, 1963, and Henry Zerbey in January, 1967.

Barbour's Chancery Reports 488, 508; see also the opinion of the late Judge HAWKINS, *In re Estate of Andrew Morton*, 32 Pitts. L.J. (N.S.) 406. In the language of YEATES, J., in the leading case of *Pemberton v. Parke et al.*, 5 Binney 601, 609, *"Grandchildren are words of equivocal import, and may or may not include great-grandchildren, according to the sense in which they may have been used by a testator, collected from the whole of his will."* (Emphasis added).

*See also Joyce Estate*, 273 Pa. 404, 408, 117 A. 90, 91 (1922), wherein it is stated:

It has often been held that a gift to children will include grandchildren, if from other words in the will it appears there was an intention to use the term in a more extensive sense (*Steinmetz's Est.*, 194 Pa. 611 [45 A. 663]; *Puterbaugh's Est.*, 261 Pa. 235 [104 A. 601] ); *a fortiori, a gift to grandchildren, under such circumstances, will include great-grandchildren, since the former is a word of equivocal import: Pemberton v. Parke*, 5 Binn. 601, 610. (Emphasis added).

In *Disston Estate*, 349 Pa. 129, 131, 36 A.2d 458 (1944) the court awarded a portion of principal to a great-grandchild under a will which provided for distribution to "grandchildren then living, per stirpes and not per capita." The Supreme Court affirmed the Orphans' Court which determined that this provision, considered with all the residuary provisions, indicated the testator's intent that great-grandchildren who were children of a deceased grandchild should share per stirpes with grandchildren.

The court has authority to give a broader meaning to the word grandchildren than ordinarily given if the testator's intent is not clear. *Grimm Estate*, 442 Pa. 127, 275 A.2d 349 (1971). If a testator's intent cannot be ascertained with reasonable certainty rules of construction are applicable to attribute a reasonable intention to the testator in the circumstances. *See Chambers Estate*, 438 Pa. 22, 263 A.2d 746 (1970); *Houston Estate*, 491 Pa. 339, 421 A.2d 166 (1980); *Farmers Trust Company v. Bashore*, 498 Pa.

146, 445 A.2d 492 (1982). In the ascertainment of a testator's intent, a clause in a will must not be read in isolation but rather in the context in which it appears. *See Clark Estate*, 359 Pa. 411, 59 A.2d 109 (1948); *Hill Estate*, 432 Pa. 269, 247 A.2d 606 (1968).

In the will under consideration it is clear that the testator intended to primarily benefit his children with respect to distribution of income from the two trusts. When he drew his will, and at his death, he had four children living, a son and three daughters. His will provided that at his death the income from both trusts was to be divided into five equal shares, one for each child whom he designated by name in his will, and one share for all his grandchildren. He further provided that upon the death of each child the income was to be divided into equal shares, one for each living child, and one share "for my grandchildren." This scheme of distribution obviously favored his surviving children who receive a larger share of income as each of testator's children dies, than would a per stirpital distribution of income, whereby the share of income of the deceased child would go to his surviving issue, as each child of testator dies. When testator's son, Joseph Henry Zerbey, Jr. died in 1945 his three remaining daughters then received one fourth of the income each, with one-fourth share going to the class designated as "grandchildren". When Frances Zerbey Braun died in 1975, his two surviving daughters each received one-third of the income, with a third for "grandchildren". When testator drafted his will he knew that his class of children would not increase, and he designated each child by name in his will. He, of course, did not know how large the class designated as "grandchildren" would be. He knew he had one grandchild when he made his will and he provided for a share of income "to be subdivided among all of my grandchildren in equal shares, including any grandchildren born after my death." While each child would never receive less than one-fifth of the income, and as each child died the remaining children would receive larger shares of income, the share for "grandchil-

dren" would be divided among an unknown number, of persons in that class.

The testator's focus was clearly on his children when he wrote his will in 1932, as far as income from the two trusts was concerned. He was an elderly man and we know that he did not live long after he put his estate in order. All of us tend to believe that in the usual order of events parents die, then children and then grandchildren. We are predisposed to think in terms of the usual order of deaths, and testator as far as income was concerned was primarily thinking of providing for his children who were to receive eighty per cent of the income while all of his children lived. He then looked to the day when all of his children would be deceased and provided that his "grandchildren" would then receive the principal in equal shares, under Paragraph NINTH(g). When testator's son, Joseph Henry Zerbey, Jr. died in 1945 his grandson, Joseph Henry Zerbey, III, then entered the class of grandchildren and participated in the distribution of income to be awarded to the class of "grandchildren." When Mr. Zerbey, III, died in 1958, at the relatively young age of 41, at a time when testator's three daughters were still living, the usual order of deaths did not occur. It would hardly have been testator's intent that Mr. Zerbey, III's, share of income would not continue to his children who were also grandchildren of testator, albeit great-grandchildren. It must be kept in mind that to allow the appellants to take their father's share of income would in no way decrease the share of income for testator's children.

The expressed intention in testator's will is to secondarily benefit the class known as "grandchildren" and we are of the opinion that in the context of testator's will that the term grandchildren also included the children of deceased grandchildren who would take their deceased parent's share as far as income distribution is involved. Appellants' herein are grandchildren of the testator notwithstanding that they are great-grandchildren and testator's will does not manifest an intention to exclude them from the class of grand-

children. We will not rewrite the testator's will, but as pointed out in *Clark Estate*, 359 Pa. 411, 420, 59 A.2d 109, 113 (1948):

It is a well recognized canon that where language is equivocal a construction enuring to the benefit of remote lineal descendants is preferred to one which favors immediate issue exclusively.

While no two wills are alike, the courts through the years have been confronted with the term "grandchildren" and the problems have been difficult to resolve. In *Carnegie Estate*, 397 Pa. 308, 155 A.2d 349, 350 (1959) which affirmed on the opinion of the court below, the testatrix's will in Item Two directed the trustees:

to pay the surplus of said income, if any, yearly during the life of the trust as to said Island property to my said children then living, and to the children of such of my named children as are then dead, the children of every deceased child taking their parent's share.

One of the children of a deceased child, being a grandchild of testatrix, died without issue, leaving to survive him children of a deceased brother who were great-grandchildren of testatrix. The issue was whether the testatrix intended that the great-grandchildren should participate in income distribution to the exclusion of the estate of the grandchild dying without issue. The Supreme Court affirming on the opinion of the court below held that in the context of the will and codicils when testatrix used the word "children" she intended "issue". The court based its decision on *Clark Estate, supra*, and stated at 155 A.2d 352:

The only substantial difference between Clark Estate and the matter before us, is in the Clark Estate the Court was concerned with a distribution of corpus and in our case we are concerned with the distribution of income. We believe that this difference is of no significance. It is this writer's opinion that the analysis of the Lucy C. Carnegie will and codicils will indicate the case before us is much stronger than the Clark Estate.

The court further stated at 155 A.2d 352:

The words that testatrix used in Item Two are exactly what the expression "per stirpes" mean. They denote a class of distributees taking the share of their deceased ancestor by right of representation. These words are: "the children of every deceased child taking their parent's share." The Clark Estate will uses a similar expression after per stirpes, to-wit: "they shall take by representation of their parents". [359 Pa. 411, 59 A.2d 110]

In the instant case the testator did not expressly state that if a "grandchild" died while his own children, or one of them still lived that the deceased child's share of income should then be distributed to his living children. However, as noted in *Greenfield Estate*, 457 Pa. 114, 121, 321 A.2d 922, 926 (1974):

It is, of course, a truism that "[w]ills are not to be interpreted in a vacuum. *A testator's intent must be taken from the meaning of his words, but* his will and a dictionary cannot always solve problems of interpretation." *Gibson v. McBurney*, 399 Pa. 195, 200, 159 A.2d 912, 915 (1960). In ascertaining the meaning of the words used by the testator, *courts may, if necessary, look beyond the language of the will itself to the circumstances surrounding him up to the time of its execution.* (Emphasis added)

A letter written by testator on December 9, 1932, indicates that he was thinking in terms of his descendants rather than the limiting concept of first and second generations in dealing with income distribution. Testator wrote as follows:

And, at all times, I want it distinctly understood as my desire that my married children keep their affairs in their own names, and the same applies to their children so that our Estate bequests and compensation stay within the family and not pass over to outsiders through marriage.

I want the persons who are married into our family to be taken well care of in the best judgment of the executors-trustees, but I don't want them to have the right and the privilege to pass on to their relatives and their friends

outside of our family any specially valuable consideration. *It is the Zerbey Estate and I want it to remain as such for the benefit of my Zerbey descendants.* (Emphasis added).

Testator also wrote in the same letter:

I have endeavored to make plain my desires, but I give the Executors-Trustees full power to act for themselves and as near as possible as they can in conformity with my desires as expressed in the body of the Will.

In interpreting wills the law will impute to the testator's words such meaning "as under all the circumstances will conform to his probable intention and be most agreeable to reason and justice." *Umberger Estate*, 369 Pa. 587, 592–3, 87 A.2d 290, 293 (1959). Further, construction of a will which leads to an unnatural or absurd result should be avoided. *Gangwisch Estate*, 454 Pa. 476, 311 A.2d 925 (1973). Appellants have a contingent interest in principal in this estate and it appears to us unreasonable to exclude them from participating in their deceased father's share of income, which is a relatively small share and does not in any way diminish the share of income for testator's children, the income beneficiaries in whom he was primarily interested. With respect to the appellants receiving distribution of their deceased father's share of income *see Wood Estate*, 321 Pa. 497, 500, 501, 184 A. 13, 15, 16 (1936) which states:

In a gift of income, distributees are to be ascertained at each periodic distribution by the formula provided by testator: *Rowland's Est.*, supra; *Rowland's Est.*, 151 Pa. 25 [24 A. 1091]. This is necessarily true even though testator does not specifically direct a periodic payment; for, from the nature of a gift of income, there must be periodic distribution, whether annually, semiannually, or otherwise, and the distributees must be determined anew at each such period. *It follows that, where income is given to a class, the distributees entitled to take at any period of distribution are the members of the class who are alive at that time, or, where representation by issue*

*is provided, the living issue of deceased members.* (Emphasis added).

We believe that it was testator's intention that if any grandchild died leaving children surviving while the trusts continued that the share of income of such deceased grandchild should be distributed to his children living at the time of income distribution. Testator's intent is best carried out by giving a per stirpital share to the living children of his deceased grandson, Joseph Henry Zerbey III, rather than a per capita share with testator's other grandchildren.

We are faced with the final problem as to when, in the matter before us, the appellants should commence receiving a distributive share of income. After appellants' father died in 1958 the trustees distributed income to the testator's remaining children, and there is no dispute concerning this, and to testator's grandchildren. This has continued until the present. The trustees acted in good faith, and on what was a reasonable, although mistaken, interpretation of testator's will. It would be manifestly unjust to allow the appellants to participate in the "grandchildren's" share of income from 1958 to the present. Several accounts have been filed during this time and confirmed by the Orphan's Court. It is only with respect to the present account that appellants have filed exceptions and an appeal is now before this court.[5] We therefore direct that appellants shall re-

---

**5.** We are not persuaded that the appellants are barred from filing exceptions to the present account by the Probate, Estates and Fiduciaries Code, Act of June 30, 1972, P.L. 508, No. 164, 20 Pa.C.S. § 3521 which provides in part:

If any party in interest shall, within five years after the final confirmation of any account of a personal representative, file a petition to review any part of the account or of an auditor's report, or of the adjudication, or of any decree of distribution, setting forth specifically alleged errors therein, the court shall give such relief as equity and justice shall require: Provided, That no such review shall impose liability on the personal representative as to any property which was distributed by him in accordance with a decree of court before the filing of the petition. . . .

Appellants timely filed exceptions to the trustees' present account, and the adjudication in the court below was limited to that account.

Likewise, although appellees have raised the defense of laches, it is not applicable in this case. Appellants timely filed exceptions to the

ceive that share of income received on or after the date of adjudication of the court below of October 1, 1980, which their father would have received if he were still living. Appellants shall not receive any part of the income received by the trustees from July 3rd, 1958 until October 1, 1980. *See Dulles Estate*, 494 Pa. 180, 431 A.2d 208 (1981).

Order reversed and case remanded for further proceedings consistent with this opinion.

adjudication of October 1, 1980, and our opinion limits their sharing in income to that received after October 1, 1980. The estate was on notice from the time of exceptions that if appellants succeeded that income would be due them.