373 A.2d 744

## In re ESTATE of Daniel A. KELLY, Deceased.

### Appeal of Imelda KELLY.

Supreme Court of Pennsylvania.

Argued April 22, 1977.

Decided June 3,. 1977.

Louis J. Gagliardi, Philadelphia, for appellant.

J. Brooke Aker, Norristown, for appellee.

Raymond M. Seidel, Norristown, for Estate of Daniel A. Kelly.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

MANDERINO, Justice.

Daniel A. Kelly died June 4, 1974 leaving a duly executed will dated July 21, 1969. The will was admitted to probate in Montgomery County, Pennsylvania, on June 11, 1974.

The decedent was survived by his wife, Imelda Kelly, and several first cousins, one of whom is Mary Hay, the appellee.

In the second paragraph of the decedent's will various pecuniary bequests were made; these gifts are not at issue. The third and fourth paragraphs of the will provide:

"THIRD: I give, devise and bequeath unto my beloved wife, Imalda [sic], that share of my estate to which she would be entitled under the Intestate Laws of the Commonwealth of Pennsylvania.

"FOURTH: All the rest, residue and remainder of my estate of whatsoever kind and wheresoever situate, real, personal and mixed, I give, devise and bequeath unto Mary Hays if she is living at the time of my death, or if deceased, then to her children or the issue of any deceased children, per stirpes."

It is not contested that Mary Hays, mentioned in the fourth paragraph of the will, and the decedent's first cousin, Mary Hay, are the same person.

The executor of the estate undertook the sale of certain real property located in Bryn Mawr, Pennsylvania which the decedent owned at his death. Mary Hay, the residuary devisee-legatee assented to the proposed sale. Imelda Kelly, contending the plain meaning of her husband's will entitled her to his entire estate, opposed the sale. A Reply and New Matter filed by Imelda Kelly asserting her right to the entire estate put in issue the respective rights of Imelda Kelly and Mary Hay under the provisions of the will as set forth above.

This matter arises upon Imelda Kelly's appeal from the decree of the Court of Common Pleas of Montgomery County, Pennsylvania, approving the executor's petition to sell real estate.

Section 2102 of the Probate, Estates & Fiduciaries Code, Act of June 30, 1972, P.L. 508, No. 164, § 2 (20 Pa.C.S.A. § 2102) which is applicable since testator died in 1974, provides for the intestate share of a surviving spouse and was incorporated by reference into the testator's will through the third paragraph. It provides in part:

"The surviving spouse shall be entitled to the following share or shares: . . . The first $20,000 in value and one-half of the balance of the estate, if the decedent is survived by no issue. . . . *All of the estate if the decedent is survived by no issue, parent, brother, sister, child of a brother or sister, grandparent, uncle or aunt.*" (Emphasis added.)

Neither at the time of the signing of the will, nor at testator's death, were any of those persons designated in Section 2102 to share the estate with the surviving spouse on an intestate, alive. Mary Hay, the residuary distributee, is a first cousin of the decedent. First cousins do not affect the widow's share.

The trial court found the third and fourth paragraphs of the will as set forth above ambiguous, heard parol evidence to resolve the ambiguities, and held that Mary Hay, a first *cousin,* would possess the rights of a surviving *aunt* of the testator.

Upon finding ambiguities the trial court allowed the scrivener of the will, over objection, to testify that in 1964, some five years prior to the execution of the will in issue, at a conference held to gather information for an earlier will, Daniel A. Kelly told him that Mary Hay was his aunt.

■■ We reverse and find that the will as written is unambiguous. The intent of the testator is clearly stated on the face of the will and it was error to admit and consider parol testimony to impute an intent to the testator that Mary Hay, a first cousin, was to receive the same share a surviving aunt would take.

The trial court found the will ambiguous in two respects. First, the appellant's construction of the will which would allow her to take all and leave nothing for the residuary taker would make the residuary clause "pointless" and "impossible of the application." Second, the failure of the decedent to identify, in the will, the relationship which Mary Hay bore to him constituted an ambiguity. We disagree with both conclusions.

Although the trial court called the residuary clause "pointless" and "impossible of application," the trial court's opinion recognized that the residuary clause could have served a purpose if there had been a change in the intestate laws, if the testator's wife, Imelda, had predeceased him, or if there had been a change in family relationships. A divorce, for instance, would have altered the family relationship. Because of the very reasons pointed out by the trial court in its opinion, we are unable to agree with its conclusion that the residuary clause was "pointless" and "impossible of application."

Moreover, as we said in *Peterson's Estate,* 242 Pa. 330, 340, 89 A. 126, 129 (1913):

"The fact that there is a residuary clause can in no wise limit or detract from what has been previously given in a will, nor can such residuary clause have the effect of putting a construction on a previous clause of the will in order to create a residue."

The trial court erred in allowing the existence of a residuary clause, a possible safety valve, to limit or detract from what had been previously given in the third paragraph of the will.

The trial court also concluded that the failure of the decedent to identify his relationship to Mary Hay constituted an ambiguity. According to the trial court, there was an ambiguity because it was necessary to resort to extrinsic evidence in order to determine whether any person mentioned in Section 2102 survived the testator.

We first note that it was undisputed that, except for the testator's wife, Imelda, no other intestate heirs were alive. Under these circumstances, it was unnecessary to admit any extrinsic evidence to determine the widow's share. Moreover, even if it had been necessary to admit and consider extrinsic evidence as to what relatives survived the testator in order to ascertain the widow's share, it does not follow that the door was open for the use of different extrinsic evidence for another purpose. Evidence as to what persons survived the testator is entirely different from evidence to show that the testator intended a disposition other than that plainly provided in the will. Under the trial court's reasoning, a testator's will could be changed any time there was a use of terms such as "all my real estate," "the money in my savings account," "my issue," "my surviving children," "my wife," "my heirs." In each of the enumerated cases, extrinsic evidence would be necessary to give effect to the will as written, but that extrinsic evidence would not be admissible to rewrite the will.

54

■■ It is true that the extrinsic evidence that at one time testator told his attorney that Mary Hay was his aunt would suggest an ambiguity. We note first, however, that *that extrinsic evidence* was *not necessary* to give effect to paragraph three of the will. Moreover, an ambiguity in a will must be found *without* reliance on extrinsic evidence *before* the extrinsic evidence is admissible. As we said *In re Mizener's Estate*, 262 Pa. 62, 66, 105 A. 46, 48 (1918):

> "A latent ambiguity can exist [only when] necessary to identify the subject matter or object of a devise *and if there is in existence a subject or object that satisfies the terms of the will, and to which they are applicable, there is no occasion for the introduction of parol evidence, and a doubt suggested by extrinsic circumstances cannot be permitted to affect its construction.* To do so would, in effect, amount to changing the will of the testator, and writing a new one for him, rather than interpreting the will of his making." (Emphasis added.)

In this case there was only one Mary Hay known to the testator. Where only one person answers the name or description provided in a duly executed will, there is no ambiguity as to object. In this case the subject matter of the testator's wife's testamentary gift was clear and unambiguous. Even though extrinsic evidence would have been necessary to ascertain the value of the gift had there been a dispute concerning whether any Section 2102 persons survived the testator, there was no such dispute.

■■ The trial court, therefore, improperly admitted parol evidence to construe a will that was clear and unambiguous. Declarations alleged to have been made by a testator to the scrivener who drew his will are not admissible to alter or add to the terms of the will. *In re Penrose's Estate*, 317 Pa. 444, 176 A. 738 (1935). *In re Beisgen's Estate*, 387 Pa. 425, 432, 128 A.2d 52, 55 (1956), rationalized the rule excluding parol evidence

tending to impute an intent to the testator different from that appearing on the face of his will as follows:

"The dangers inherent in admitting parol evidence to prove a testator's intention—namely, opening the door to fraud, changing or defeating the testator's intention, or nullifying the provisions of the Wills Act requiring Wills to be in writing and signed by testator at the end thereof—make clear the reason for the exclusion of such evidence."

*See also Umberger Estate,* 369 Pa. 587, 87 A.2d 290 (1956).

Paragraphs three and four of the will are unambiguous. The testimony of the scrivener of the will was inadmissible to disprove the testator's intent as gleaned from the four corners of his will.

■ The trial court in the case at bar, in effect, rewrote the fourth paragraph of the will to include a specific bequest to Mary Hay. Since the will was unambiguous, the court erred in rewriting the will. "A court may not, however, under guise of construction or under general powers of equity assume to correct or redraft the will in which the testator has expressed his intentions." *Reinheimer Estate,* 265 Pa. 185, 108 A. 412 (1919), *In re Estate of Thomas,* 457 Pa. 546, 551, 327 A.2d 31, 34 (1974). The executor's petition to sell real estate should not have been approved since the appellant's share of the estate is not affected by the residuary clause.

Decree reversed and the matter remanded for further proceedings consistent with this opinion, and the further administration of the estate.

EAGEN, C. J., concurs in the result.

POMEROY, J., filed a dissenting opinion.

POMEROY, Justice, dissenting.

I dissent and would affirm the decree below on the basis of the opinion of Judge Taxis of the Orphans' Court Division of the Court of Common Pleas of Montgomery County.