466 A.2d 1382

**ESTATE OF Israel SCHWARZBARTH, Deceased.**

**Appeal of Laura FREIMAN, Exceptant.**

Superior Court of Pennsylvania.

Argued Feb. 17, 1983.

Filed Oct. 14, 1983.

192

Delano M. Lantz, Harrisburg, for appellant.

Bernard Chanin, Philadelphia, for participating party.

Before CIRILLO, JOHNSON and MONTEMURO, JJ.

CIRILLO, Judge:

This is an appeal from a Final Decree of December 23, 1981, issued by the Court of Common Pleas of Luzerne County, Orphans' Court Division, which dismissed objections to a Petition for Adjudication and Account.

Israel Schwarzbarth died testate on December 17, 1965, and his Will and Codicils were probated on December 31, 1965. Among the assets of his estate was a trust, created out of the residuary estate, the income of which was to be paid to his widow, the executrix, Goldie Schwarzbarth (hereinafter "Goldie").[1] Mrs. Laura Freiman, decedent's adopted daughter and the appellant here, filed objections to the account on November 18, 1969 and amended objections on October 18, 1978, claiming that she was entitled to a share of the trust property.[2] The basis for her claim was that

1. We refer to decedent's widow as "Goldie" with all due respect, because of the issue involved in this case.

2. Under Paragraph 2, subsection (b) of the probated Will, upon the termination of the trust in question, the undisposed principal and income is to be distributed in three equal shares: the first share to the appellant, the second share to the decedent's second adopted daughter Maxine, and the third share to the children of both daughters.

Goldie had failed to comply with the terms of the trust and had thereby forfeited her interest therein.[3]

The matter was heard before the Orphans' Court which found that the requirements set forth in decedent's Will, relating to the trust, had been complied with and entered an Adjudication and Decree Nisi to that effect on November 12, 1981. Appellant filed a motion for leave to file exceptions nunc pro tunc to the Adjudication and the Decree. The Orphans' Court, on December 23, 1981, entered a Final Decree, which while granting the motion to file exceptions nunc pro tunc, dismissed the exceptions in their entirety.

Paragraph 2, Subsection (a) of Israel Schwarzbarth's Will, executed on February 23, 1965, and on which the appellant's claim is predicated, provides as follows:

> To pay the net income therefrom periodically, but not less than quarterly, to or for the benefit of my wife, GOLDIE, during her life or for so long as she shall retain the surname of SCHWARZBARTH, whichever event shall first occur.

Subsection (b) of Paragraph 2 of the Will was altered by Codicil dated June 25, 1965, and provides that,

> "Upon the occurrence of either of the two events mentioned in Subparagraph (b) of this Item of my Will, the said Trust shall terminate and the Trustee shall distribute all the undistributed principal and income, free of Trust, in three equal shares, with one of the said shares to go to my daughter, LAURA, another of the said shares to my daughter, MAXINE, if they are then living, and third of the said shares shall be cut up into as many parts as I have grandchildren then living, that is to say, children of my said daughters, LAURA and MAXINE, with each of the said grandchildren to take per capita. In the event, however, that either of my daughters, LAURA or MAXINE, should not survive the occurrence of either of the two events mentioned in Subparagraph "A" of this item,

---

**3.** In her objections, appellant also claimed that there were accounting errors in the account. The accounting objections were later withdrawn.

then the share of such deceased daughter as she would have received had she survived, shall be paid to her issue, per stirpes, free of Trust."

Appellant contends that Goldie's remarriage to A. David Fried on May 18, 1969, in and of itself, or, in the alternative, the occasional use of her marital surname constitutes non-compliance with the condition set forth in subsection (a) which provides that the income of the trust shall be distributed to Goldie "during her life *or for so long as she shall retain the surname of Schwarzbarth ....*" (emphasis added). Therefore, appellant contends that since Goldie has not "retained" the surname of Schwarzbarth within the terms of decedent's Will, Goldie's life estate therein has been forfeited and the principal and undisposed income should be distributed pursuant to the terms of subsection (b) of the second paragraph of the probated Will.

The Orphans' Court, after determining that the intention of the testator was unclear from the actual language utilized in his Will, looked to extrinsic evidence and found that Goldie had retained the surname of Schwarzbarth in the manner and to the extent intended by the decedent. For the following reasons we affirm the holding of the Orphans' Court.

The process of testimentary adjudication has been well-established by the Pennsylvania Supreme Court.

It is, of course, a cardinal rule that a will is to be construed according to the intent of the testator. Where a court feels that it can with reasonable certainty ascertain the intent of the testator through examination of the will itself, the court generally does not look to matters external to that document. Where, however, a court cannot feel such confidence in distributing the estate by reference to the will only, ... it is proper and necessary to inquire into the circumstances of the testator at the time of execution of his will and other evidence which bears on intent. And if even then a court is unable to say with reasonable certainty what the testator intended, resort is had to the canons of construction.

*Taylor's Estate,* 480 Pa. 488, 494, 391 A.2d 991, 994 (1978) (citations omitted).

■ Looking to this process, the appellant argues that the testator's intent may be ascertained from the actual words of the Will without resort to extrinsic evidence. We disagree. When examining the phrase "for so long as she shall retain the surname SCHWARZBARTH ...." it is unclear whether the testator intended to penalize his widow's remarriage by requiring her to forfeit her right to life income by remarriage, or whether he intended merely to require her to use the Schwarzbarth surname as her own in order to maintain her eligibility as income beneficiary. The instant case is one envisioned by the Supreme Court where the Court cannot feel confidence in distributing the estate by reference to the terms of the Will alone, as the testator's intent is shrouded in ambiguity by the literal terms of the Will. *Taylor's Estate, supra.* We must therefore resort to extrinsic evidence to clarify the intention of the testator with respect to the trust estate and to determine whether Goldie's use of the Schwarzbarth surname complied with this intent.

It has long been held in Pennsylvania that examination of prior wills is helpful in determining the intention of the testator. Thus, in *Williamson's Estate,* 161 Pa.Super. 106, 53 A.2d 869 (1947), this Court held:

> Where there is such an ambiguity in a Will as to justify consideration of extrinsic evidence former Wills executed by testator may be considered to throw light on his intention.

161 Pa.Super. at 110, 53 A.2d at 871.

The 1965 Will, in effect at the time of testator's death, revoked a prior Will, dated August 26, 1957, which provided for a trust with a life estate to Goldie and which contained, *inter alia,* the following language:

> FOURTH: (a) I give, devise and bequeath all of the rest, residue and remainder of my estate, real, personal or mixed, wheresoever and whatsoever, unto my Trustees hereinafter named, in Trust, nevertheless, to hold the

same in Trust, and to collect the income therefrom and, after paying all proper expenses, taxes and charges incident to the management and administration of the Trust, to pay GOLDIE, until she shall attain the age of Sixty-five (65) years, *or until she shall remarry,* whichever event shall first occur. (Emphasis added).

Therefore, the testator's immediately preceding Will had expressly and unambiguously provided for the forfeiture of his widow's interest in the trust in the event of her remarriage. That language, which was eliminated in the probated Will, demonstrates that the testator was capable of expressing an intention to cause a forfeiture under the circumstances of remarriage. His failure to have carried that provision over demonstrates an intention different than that manifested in the 1957 Will. Instead, he chose to free Goldie to remarry, subject only to the condition regarding the Schwarzbarth name.

■ Other evidence presented also indicates that the testator did not intend for his widow to forfeit her life estate upon remarriage. The testator had no male heirs. Both the widow and the scrivener testified that the testator was preoccupied with the continuation of his name. During the course of the 20 years during which the Schwarzbarths were married, the testator became convinced of his wife's devotion and loyalty and his only concern was that his name live on. As the scrivener explained, the change from prohibition of remarriage to continuation of the surname Schwarzbarth reflected "a deep genuine feeling by the decedent toward his wife of love, affection and appreciation." Furthermore, because of the 30 year difference in their ages, the testator was aware that Goldie would probably remarry. Therefore, we conclude that remarriage was not what the testator wished to prohibit and that under the terms of the Will, Goldie did not forfeit her life estate upon her remarriage. The right to receive the income of the trust was subject only to the retention of the Schwarzbarth name.

■ We must now determine the testator's actual intent surrounding the use of the phrase "for so long as she shall retain the surname of SCHWARZBARTH ...." Appellant strongly urges this Court to interpret this phrase as requiring exclusive and continuous use. Upon review of the evidence presented at trial, and the circumstances surrounding the testator at the time of execution of the Will, we conclude that the testator did not intend this phrase be given such a strict construction.[4]

Almost all of the extrinsic evidence presented in the instant case reveals a close, devoted and trusting relationship between the testator and his wife. During the testator's later years when he was ailing and unable to conduct his business, Goldie assumed the duty of its supervision and oversight. In this regard, all parties to the controversy testified that the success of testator's business ventures was due in large measure to the efforts of Goldie Schwarzbarth. Testimony by the scrivener of the probated Will established that over the course of the many years of marriage, the testator came to trust and believe in the loyalty of his wife. Accordingly, the testator revoked his prior Will, which contained an absolute forfeiture provision, and in its place created a life estate for Goldie subject only to the condition that Goldie "retain" the Schwarzbarth surname.[5]

**4.** Appellant argues that under common-law principles, a married woman adopts the surname of her husband unless she uses her premarital surname exclusively and continuously. Appellant cites several cases from other jurisdictions in support of this position. However, because we are dealing with testamentary interpretation, we must follow the well established mandate that the testator's intention is polestar in the construction of every will and must prevail, *Houston's Estate*, 414 Pa. 579, 201 A.2d 592 (1964), and determine the effect which the testator intended through the use of the phrase in question.

**5.** By Codicil to the probated Will, dated October 30, 1965, the testator appointed his wife Goldie the sole executrix, altering the provision in the Will which appointed appellant's husband and the testator's son-in-law, Gerald Freiman, and Goldie, joint executors of the Will. This is a further indication of growing trust and devotion in the Schwarzbarth marriage.

In light of this evidence, we agree with the Orphans' Court that the testator must be deemed to have understood that Goldie would encounter some difficulty in maintaining the Schwarzbarth surname in each and every transaction following remarriage. Rather, the testator, through the use of the phrase in question, was asking that his widow perpetuate the Schwarzbarth name in the community in which it was known in order to give it viability and currency, and did not intend to create any hardship for his widow in the event of her remarriage.

■ Evidence presented at trial indicates that Goldie utilized the Schwarzbarth surname in many aspects of her private and public life. The Schwarzbarth surname appears on her driver's license, social security health insurance card, personal checking account, and numerous credit cards, both old and new. In addition, Goldie has exclusively utilized the Schwarzbarth surname in the Harvey's Lake, Luzerne County area where the Schwarzbarths resided during their marriage. Accordingly, the surname appears with regard to her real estate holdings in the Harvey's Lake area. Furthermore, Goldie testified that in her ongoing relationships with her acquaintances, neighbors, community and friends in the Harvey's Lake area, she holds herself out to be "Mrs. Schwarzbarth." With respect to Goldie's use of the Fried surname, the appellant produced documents which are largely official in nature, such as voting records and bank accounts, appearing most often in connection with Goldie's present husband's business transactions.

We conclude, therefore, that Goldie perpetuated and "retained" the Schwarzbarth surname in accordance with the testator's intent. She maintained the currency of the surname in the area in which it was known. To require exclusive use of the name would be contrary to the intentions of a man who had a loyal and rewarding relationship with his wife.

■ Additionally, we note that when construing conditions in wills, a reasonable construction must be given in

favor of the beneficiary. In *Davis Estate,* 275 Pa. 126, 118 A. 645 (1922), the Pennsylvania Supreme Court stated,

[W]hether there has been a performance or breach ... of a condition subsequent, depends upon a construction of the condition, a reasonable construction to be given in favor of the beneficiary and a strict construction against a forfeiture, ...

275 Pa. at 130, 118 A. at 647. To interpret the phrase in question to mean exclusive and continuous would require a strict construction working a forfeiture of Goldie's interest in the decedent's estate and would not give Goldie the benefit of the reasonable construction to which she is entitled to avoid such forfeiture.

■ Furthermore, it is well-established that a court construing a will should do so "in [accord] with the principle which resolves doubts in favor of a widow who accepts the provisions of a will in lieu of her rights under the intestate laws." *Tarter's Estate,* 291 Pa. 458, 462, 140 A. 502, 504 (1928).

Order of the Orphans' Court affirmed.

JOHNSON, J., filed a dissenting opinion.

JOHNSON, Judge, dissenting:

This case involves the enforcement of a testimentary provision requiring decedent's widow to continue to use decedent's surname. The majority limits the surname requirement to the community of Harvey's Lake in which decedent resided at the time of his death and provides an exception for situations where it could inconvenience or embarrass the widow or her current husband. Finding such interpretation to be contrary to the clear intent of the testator, I must respectfully dissent.

The primary consideration in construing and interpreting a will is to give effect to the intent of the testator. *Matter of Estate of Blough,* 474 Pa. 177, 185, 378 A.2d 276, 280 (1977); *In re Estate of Jacobson,* 460 Pa. 118, 122, 331 A.2d 447, 446 (1975); *Estate of Zerbey,* 313 Pa.Super. 297, 302,

459 A.2d 1237, 1240 (1983). Unless the will is ambiguous, a court should extract such intent from the four corners of the will. *Blough,* supra; *Jacobson,* supra. Only where a court cannot ascertain the testator's intent from the will itself may the court look to matters outside of such document. *Estate of Taylor,* 480 Pa. 488, 494, 391 A.2d 991, 994 (1978); *In re Estate of Soles,* 451 Pa. 568, 571–72, 304 A.2d 97, 99 (1973). The majority relies on extrinsic evidence to support its interpretation of the will; I find such unnecessary.

The Schwarzbarth will, paragraph SECOND, which is in dispute, reads as follows:

(a) To pay the net income therefrom periodically, but not less than quarterly, to or for the benefit of my wife, GOLDIE, during her life or for *so long as she shall retain the surname of SCHWARZBARTH,* whichever event shall first occur.

(b) Upon the occurrence of either of the two events mentioned in Subparagraph (b) [sic] of this Item of my Will, the said Trustee shall distribute all the undistributed principal and income, free of Trust, in three equal shares, with one of the said shares to go to my daughter, LAURA, another of the said shares to my daughter, MAXINE, if they are then living, and the third of the said shares shall be cut up into so many parts as I have grandchildren then living, that is to say, children of my said daughters, LAURA and MAXINE, with each of the said grandchildren to take per capita. In the event, however, that either of my daughters, LAURA or MAXINE, should not survive the occurrence of either of the two events mentioned in Subparagraph "A" of this item, then the share of such deceased daughter as she would have received had she survived, shall be paid to her issue, per stirpes, free of Trust.[1]

(Emphasis supplied.) In the majority's view, paragraph (a) is unclear as to whether the testator wished to penalize his

---

1. The above language of subparagraph (b) may be found in a codicil dated June 25, 1965.

widow if she remarried or merely wished to require her to use the surname of Schwarzbarth. The majority then examines a preceding will and determines that the provision required merely the continuation of the name. The Orphans' Court accepted testimony from both the widow and the scrivener concerning testator's preoccupation with the continuation of his name.[2] The majority construes such concern as not requiring exclusive and continuous use.

In reaching its conclusion, the lead opinion looks to the testator's and his widow's relationship. As the lower court did, my colleagues infer that the testator must have understood that his widow upon remarriage would encounter difficulty in maintaining the surname. Therefore they theorize that the testator only wished that the name be perpetuated in the community in which it was known, as he did not intend to cause any hardships to his widow.[3]

*In re Estate of Kelly,* 473 Pa. 48, 54, 373 A.2d 744, 747 (1977) held that:

[A]n ambiguity in a will must be found without reliance on extrinsic evidence before the extrinsic evidence is admissible. As we said *In re Mizener's Estate,* 262 Pa. 62, 66, 105 A. 46, 48 (1918):

"A latent ambiguity can exist [only when] necessary to identify the subject matter or object of a devise and if there is in existence a subject or object that satisfies the terms of the will, and to which they are applicable, there is no occasion for the introduction of parol evidence, and a doubt suggested by extrinsic circumstances cannot be permitted to affect its construction. To do so would, in effect, amount to changing the will of the testator, and writing a new one for him, rather than interpreting the will of his making."

See also *Battles' Estate,* 379 Pa. 140, 143–44, 108 A.2d 688, 690 (1954); contra, *In re Estate of Jacobson,* 460 Pa. at 123,

2. He had no male heirs to continue the name.

3. The majority does not address the possibility that the widow would remarry and remain in the same community nor the fact that the couple had spent considerable time in New York State.

331 A.2d at 449. The majority, after reviewing the extrinsic evidence, determines that the testator's chosen language is ambiguous and therefore, in my opinion, reforms the clear intent of the decedent.

Declarations allegedly communicated to the scrivener of the will should not be admitted to alter the intent of the testator as gleaned from the four corners of the will. *In re Estate of Kelly,* supra. In a similar light, extrinsic evidence of the surrounding circumstances existing at the time the will was executed cannot be received as evidence of intent independent of the written form used. *In re Estate of Jacobson,* supra. Furthermore, "[t]he duty of the court is not to determine what the testator might or should have said in light of subsequent events but, rather, the actual meaning of the words used." *Estate of Blough,* 474 Pa. at 185, 378 A.2d at 280; quoted in *Estate of Toland,* 495 Pa. 482, 486, 434 A.2d 1192, 1194 (1981) and *Estate of Zerbey,* 313 Pa.Super. 297, 302, 459 A.2d 1237, 1240 (1983).

The chancellor relied on all three sources: the scrivener's recollection, the relationship of testator and his widow at the time the will was signed, and the subsequent effect of the provision upon the widow. I cannot condone such consideration when the will, in my opinion, is straightforward. The will conditions the payment of the income of the trust upon the widow's continual use of the surname Schwarzbarth; it does not condition it upon the use in a certain community nor so long as it does not create any inconvenience. Should the widow discontinue the use of the name the income goes to the testator's daughters. To interpret it otherwise is to write the condition out of the will.

Nor do I believe that the rules of construction, as they pertain to such conditions, require us to give it such an interpretation. The language here in dispute is "for so long as." Such a phrase creates and denotes a valid determinable life estate which would automatically expire upon appellee's failure to retain testator's name. See *Higbee Corp. v. Kennedy,* 286 Pa.Super. 101, 107, 428 A.2d 592, 594–95

(1981); *Stolarick v. Stolarick*, 241 Pa.Super. 498, 506, 363 A.2d 793, 797 (1976). While such conditions are not favored in law as they terminate estates, where the grantor's intention to limit the grant is clear, the condition will be enforced. *Cooper v. Milikovsky*, 382 Pa. 30, 112 A.2d 616, 617 (1955) (per curiam affirmance on basis of trial court's opinion; opinion not reprinted in official reporter); *Higbee Corp.*, 286 Pa.Super. at 109, 428 A.2d at 596.

The majority has relied on various rules of construction to aid them in determining the testator's intent. However, one should not resort to such canons of construction unless the will is ambiguous. *Estate of Sykes*, 477 Pa. 254, 257, 383 A.2d 920, 921 (1978), *Estate of Blough*, supra. Since, in my opinion, the intent of the testator is clear from the four corners of the will, the only question that must be decided is whether appellee retained the surname of Schwarzbarth.

I find that the record is abundantly clear that appellee used both the surname of Schwarzbarth and Fried, independently of each other, depending upon which community she was concerned with. If she was dealing with the Harvey's Lake area she was known as Mrs. Schwarzbarth. When she was in Allentown she was known as Mrs. Fried. It is true that many of her credit cards were in the name of Schwarzbarth; but it is equally true that the majority of them were continued from the time she was married to the decedent. Of those later acquired, one was in the testator's surname, the other in the name of Fried.

The majority notes that appellee's driver's license was in the name of Schwarzbarth, but refers to her voting record and bank accounts, which were in the name of Fried, as being "largely official." Many of these records or documents are justified by their relationship to Mr. Fried's business. I am unpersuaded. A voter's registration is non-business related. Many of the various bank accounts held in the name of Fried are not business related. Furthermore, such business was conducted under a non-family corporate name; hence, in my opinion, the use of her husband's name was not necessary.

The decedent had been very proud of his Jewish heritage. The record reflects that he had made sizeable donations to Jewish organizations. Yet, his widow, who has accepted trust payments conditioned upon her continued use of the decedent's surname, made her pledge to the Jewish Federation of Allentown in the name of Mrs. A. David Fried, rather than in the name of Schwarzbarth.

Appellee's own testimony summarizes the use of decedent's name. She stated: "Whenever it is proper and whenever I can, I use the name of Schwarzbarth. When it would have any effect or embarrassment on my husband, I use the name of Fried." (N.T. p. 177) "Whenever I can use the name of Schwarzbarth without embarrassing my husband, I use it." (Id.)[4] Is such use consistent with Mr. Schwarzbarth's clearly expressed intent? I think not.[5]

If we place ourselves in the testator's arm chair and assume his point of view, see *In re Estate of Soles*, 451 Pa. 568, 574, 304 A.2d 97, 100 (1973) (plurality opinion), we are appalled by what we now see before us. He was in failing health, married to a woman thirty years his junior, he was without male heirs, but intent on continuing his name. He did not want to unduly inhibit his wife from remarrying, but he did want his name to be remembered. To promote the continuation of his name he required his widow to continue its use, under the threat of forfeiture of trust payments. A few years after his death, his widow remarries and instead of honoring his name, only uses it when it is convenient for her to do so. Decedent provided for such possibility by providing for the forfeiture provision. However, the courts have refused to honor his wish and, instead, his name continues on only in the legal journals of this Commonwealth.

**4.** The record in no way suggests how some of the uses could embarrass Mr. Fried.

**5.** I do not reach the question of whether the surname had to be used exclusively without exception, as the facts of this case indicate more than an occasional variance from the requirement.

The majority expresses its view that forfeiture would be unjust in light of appellee's faithfulness to the decedent for twenty years. I find the majority's resolution of this appeal to be unjust to the testator; it is *his* intent we are to effect.

I would reverse the order of the Orphans' Court. Hence, this dissent.