J-A15038-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: DONALD BANY REVOCABLE LIVING TRUST | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: MARY LEE METER | : : : : : : | |
| | : | No. 1276 MDA 2023 |

Appeal from the Order Entered August 18, 2023
In the Court of Common Pleas of Centre County Orphans' Court at No(s):
2020-0301

BEFORE:   DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:                    **FILED DECEMBER 17, 2024**

Mary Lee Meter ("Meter") appeals from the order entered by the Centre County Orphans' Court ("orphans' court") finding Christopher Snyder ("Snyder") an intended beneficiary of the Donald Bany Revocable Trust (the "Trust") and entering a declaratory judgment in favor of Snyder. Upon review, we conclude that the orphans' court failed to abide by this Court's remand order, ***see In re Donald Bany Revocable Living Trust***, 336 MDA 2021, 2022 WL 1284616 (Pa. Super. Apr. 29, 2022) (non-precedential decision) ("***Bany I***"), and that its decision is not supported by the evidence of record. We therefore reverse.

---

[*] Former Justice specially assigned to the Superior Court.

The certified record reflects the following. Donald Bany ("Decedent") died on January 4, 2017. During his life, Decedent had a wife but no children. Snyder and Meter are brother and sister, and Decedent's nephew and niece. During Meter's childhood, she developed a close relationship with Decedent and his wife. In 1974, when Meter was eleven years old and Snyder was six years old, Decedent executed a last will and testament ("the 1974 Will") in which he named his wife the sole beneficiary of his estate and designated Meter as the only contingent beneficiary. The 1974 Will did not include Snyder as a beneficiary of any kind.

On December 17, 2013, after the death of his wife, Decedent executed a second last will and testament ("the 2013 Will"). In the 2013 Will, Decedent named Meter as the sole beneficiary of his estate and designated Meter's then husband Dr. Jeffrey Meter ("Dr. Meter") as the sole contingent beneficiary. Once again, the 2013 Will did not include Snyder as a beneficiary of any kind. Along with the 2013 Will, Decedent executed a general power of attorney in which he named Meter as his sole agent.

On July 9, 2015, Decedent executed the Trust to aid in the distribution of his assets upon his death. In the Trust, Decedent named himself and Meter as co-trustees during his lifetime and subsequently Meter as the sole trustee upon his death.

Relevant to the instant matter, Article 1 of the Trust provides, in pertinent part:

My descendants shall be limited to Mary Lee Meter, my niece, her children and her husband Jeffrey J. Meter and my nephew Christopher Roger Snyder.

Trust, 7/9/2015, Article 1. Additionally, Article 5.2 of the Trust provides, in relevant part:

5.2 Residuary Trust Estate. The Trustee shall divide the remaining Trust Estate into separate shares for my descendants, *per stirpes*. The Trustee shall hold each beneficiary's share as a separate trust under Article 6. If I have no descendants living at my death, the Trustee shall distribute the remaining Trust Estate to Mary Lee Meter and to Jeffrey J. Meter and Christopher Roger Snyder in the event Mary Lee Meter does not survive me[.]

Trust, 7/9/2015, Article 5.2.

Four days later, on July 13, 2015, Decedent executed a third and final last will and testament ("the 2015 Will") in which he left all his personal property to Meter and the residue of his estate to the Trust. Decedent did not name Snyder as a beneficiary of the 2015 Will. Decedent named Meter as his sole personal representative and stated that Dr. Meter and Snyder were to serve as co-personal representatives in the event Meter was unable fulfill that role.

A prior panel of this Court set forth the procedural history preceding this appeal as follows:

On July 6, 2020, Snyder filed a petition to show cause why Meter should not be directed to file an account of her administration of the Trust. On August 31, 2020, Meter filed an answer to the petition, as well as a counterclaim seeking a declaratory judgment that Meter is the sole beneficiary of the trust and that Snyder "has no claim to any remaining trust assets." Counterclaim for Declaratory Judgment, 8/31/20, at ¶ 2. On October 20, 2020, the [o]rphans' [c]ourt issued an order

directing, inter alia, that Meter file an account of her administration within 45 days. On December 4, 2020, Meter filed an amended counterclaim in which she expanded upon her allegations, and to which she attached copies of earlier wills, executed by [Decedent] in 1974 and 2013, that excluded Snyder as a beneficiary. She also attached to the amended pleading a copy of an email from the scrivener of the Trust, Gerald Nowotny, Esquire [("Nowotny")], in which he explained that it was [Decedent's] intent that Meter "would be the only beneficiary of the trust." Amended Counterclaim, 12/4/20, at Exhibit A.

Following a status conference, on January 7, 2021, the court issued an order again directing Meter to file an account and ordering the parties to file briefs on the issue of whether Snyder is a beneficiary of the Trust. Both parties submitted briefs, and Meter filed her account on January 21, 2021. In her brief, Meter argued that the terms of the Trust—specifically, Articles 1 and 5.2—were "contradictory," "paradoxical," and "nonsensical," and, therefore, ambiguous. Respondent's Brief in Opposition, 1/15/2021, at 3-4. Accordingly, Meter argued that the court should turn to extrinsic evidence—specifically, [Decedent]'s prior wills and the testimony of the scrivener—to "cut" the "Gordian knot presented by the operative language in the Trust." *Id.* at 6.

On February 26, 2021, without holding a hearing, the court issued an opinion and order in which it concluded that the Trust was not, in fact, ambiguous. In particular, the court "[did] not interpret the final sentence of Article 5.2 to create ambiguities in [Decedent's] intent; instead[,] the court found the sentence to be the result of boilerplate language written by a lackadaisical scrivener." Orphans' Court Opinion, 2/26/2021, at 4. The court went on to state that "even assuming, arguendo, that extrinsic evidence was necessary, the documents provided by Meter would not result in a different conclusion by the court" because any documents admitted as extrinsic evidence to elucidate [Decedent]'s intent "must be related to the trust." *Id.*, citing I*n Re Blish Trust*, 38 A.2d 9 (Pa. 1944). The court concluded that

> here, the two documents related to [the] Trust are [Decedent's] 2015 [W]ill and the Trust Agreement itself. When viewing these together, both documents are consistent and neither establishes an intent on the part of [Decedent] other than for his residuary estate to pass to the Trust which, upon his death, was to then

- 4 -

be separated into individual trusts for his named descendants.

Orphans' Court Opinion, 2/26/2021, at 4.

***Bany I***, at *1-*2 (record citations modified, original brackets omitted).  The orphans' court therefore entered an order in favor of Snyder, declaring him to be a beneficiary of the Trust and determining that he therefore had standing to compel an accounting of the Trust.

Meter appealed.  On April 29, 2022, this Court vacated the orphans' court's order, concluding that the language of the Trust was "manifestly ambiguous" as to identifying the intended beneficiaries.  ***Id.*** at *5-*6.  First, this Court determined that because Article 1 defined "descendants" as Meter, Meter's children, Dr. Meter, and Snyder, the last sentence of Article 5.2 was "impracticable," as it directed distribution to contingent beneficiaries who would have all had to have predeceased Decedent.  ***Id.*** at *5.  Second, we explained that the use of the phrase "per stirpes"[1] in Article 5.2 was likewise ambiguous because under Article 1, Decedent limited his descendants to Meter, Meter's children, Dr. Meter, and Snyder, thus precluding anyone more remote than Meter's children from taking under the Trust.  ***Id.***  This Court

---

[1] "Ordinarily, the words 'per stirpes' are used with respect to substitutional gifts to substituted legatees in the event of the death of a primary legatee or legatees …, yet the expression 'per stirpes' may be used in two different senses; it may refer, first, to a taking by right of representation, and second, to a taking collectively by families and not equally as individuals[.]" ***In re Grimm's Estate***, 275 A.2d 349, 357 (Pa. 1971) (quotation marks, brackets, and citations omitted).

- 5 -

therefore concluded that the Trust was ambiguous as to whether Decedent's intent was for Meter to be the sole beneficiary, or whether he intended for Meter, her children, Dr. Meter, and Snyder to be the beneficiaries, and we ordered the orphans' court, on remand, to take extrinsic evidence to ascertain Decedent's intent. ***See id.***

On June 2, 2023, following remand, the orphans' court held an evidentiary hearing during which it heard testimony from Dr. Meter, Snyder, Meter, Nowotny, and Mary Laine ("Laine"). At the hearing, although Dr. Meter initially testified that it was his understanding that Decedent intended for Snyder to benefit from the Trust because Snyder had become disabled in an accident, he ultimately stated on cross-examination that he did not know who Decedent intended to name as beneficiary of the Trust. N.T., 6/2/2023, at 18, 23-24. Following Dr. Meter's testimony, Snyder testified stating that he possessed no knowledge regarding the creation of the Trust and did not know that the Trust existed until after Decedent's death. ***Id.*** at 37, 41. Next, Meter testified that her uncle intended for her to be the sole beneficiary of his entire estate, including the Trust. ***See id.*** at 44-115. She also spoke at length regarding engaging Nowotny to create the Trust at Decedent's request and her subsequent interactions with him about drafting the Trust. ***See id.*** After Meter's testimony, Nowotny testified that, in regard to drafting the Trust, it was always his understanding that Meter was to be the sole beneficiary of the Trust, that she was his only point of contact regarding the preparation of the

Trust document, and that he relied on Meter's representations about Decedent's intentions with respect to the Trust. *Id.* at 121, 131, 133. Finally, Laine, who is Meter's friend, testified that she visited Decedent while he was staying at an assisted living facility and that during one of her visits, Decedent told Laine that "he was leaving everything to [Meter] because she was so good to him," and that "he wasn't leaving anything to [Snyder] because [Snyder] never came to visit him and [Snyder] wasn't good to him when he … was growing up[.] *Id.* at 149-50.

On August 18, 2023, the orphans' court again entered an order and declaratory judgment in favor of Snyder, finding him an intended beneficiary of the Trust. In so holding, the orphans' court found the extrinsic evidence presented at the hearing was unhelpful in its consideration of Decedent's intent and proceeded instead "as if no extrinsic evidence were permitted at all[.]" Orphans' Court Opinion, 8/18/2023, at 12. It determined that Article 5.2 of the Trust "unambiguously require[d] the Trustee to divide the Trust Estate into separate shares for each of Decedent's descendants: [Meter], [Dr.] Meter, [Meter]'s children, and [Snyder]." Orphans' Court Opinion, 8/18/2023 at 5, ¶ 20. The court found that this interpretation was supported by the extrinsic evidence presented, as it found Dr. Meter credibly testified "regarding Decedent's desire to ensure that [Snyder] was taken care of after [his] accident." *Id.*

On September 13, 2023, Meter filed a timely notice of appeal. Both Meter and the orphans' court have complied with Pennsylvania Rule of Appellate Procedure 1925. Meter presents the following issues for review:

1.      Did the orphans' court commit an error of law and/or abuse of discretion when it determined that Article 5.2 of the [Trust] is, at least in part, unambiguous, when this Court, in its previous decision in this case, specifically held that the said article is manifestly ambiguous, particularly, although not only, due to the use of the term "descendants" in said article?

2.      Did the orphans' court commit an error of law and/or abuse of discretion when it determined that it cannot rely on what it termed "parol evidence" to resolve the ambiguity contained in the [Trust] and determine [Decedent]'s intention with respect therewith, as this Court, in its previous decision in this case, specifically held that the orphans' court was required to receive and consider extrinsic evidence on the issue of [Decedent]'s intent?

3.      Did the orphans' court commit an error of law and/or abuse of discretion when it interpreted the language of the [Trust] with respect to beneficiaries "contained within the four corners of the document to ascertain Decedent's intent" as this Court, in its previous decision in this case, specifically held that the language at issue is manifestly ambiguous, and, as such, cannot be interpreted by looking solely to the language of the [T]rust itself?

4.      Did the orphans' court commit an error of law and/or abuse of discretion by interpreting the language of the [Trust] "as if no extrinsic evidence were permitted at all" given this Court, in its previous decision in this case, specifically held that the [Trust] is not capable of interpretation as to beneficiaries in the absence of extrinsic evidence?

5.      Did the orphans' court commit an error of law and/or abuse of discretion by determining that the testimony of [Meter] was not credible due to her previous deposition testimony in her divorce proceeding in Connecticut, [when] said testimony was not inconsistent?

6. Did the orphans' court commit an error of law and/or abuse of discretion by apparently refusing to consider the testimony of the scrivener of the [Trust], when the orphans' court did not [find] his testimony to be incredible and no objection was raised to said testimony?

7. Did the orphans' court commit an error of law and/or abuse of discretion by refusing to credit the testimony of Mary [Laine] on the sole basis that the statements at issue were made by [Decedent] in this case to her concerning the disposition of Decedent's estate "[] significantly after Decedent executed the Trust," where the orphans' court did not otherwise find her testimony to be incredible, no objection was raised to such testimony, and the statements at issue were made a mere eighteen months after [Decedent] executed the [Trust]?

8. Did the orphans' court commit an error of law and/or abuse of discretion by refusing to consider extrinsic evidence of [Decedent]'s intent with respect to beneficiaries of the [Trust] contained in his previous estate planning documents?

9. Did the orphans' court commit an error of law and/or abuse of discretion by finding that "Decedent executed a last will and testament on December 17, 2013 … leaving his entire estate to [Meter] and her then-husband, [Dr.] Meter," when the unambiguous test of the 2013 Will states that [Decedent left] his entire estate to [Meter], and that [Dr.] Meter was only a beneficiary if [Meter] failed to survive Decedent?

10. Was the orphans' court verdict supported by sufficient evidence given that [Snyder] presented no extrinsic evidence with respect to [Decedent]'s intention concerning beneficiaries of the [Trust]?

Meter's Brief at 2-6.

We begin by recognizing the following:

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact[,] which are predicated upon the credibility of the witnesses, whom

the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the orphans' court's findings, our task is to ensure that the record is free from legal error and to determine if the orphans' court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

*Est. of A.J.M.*, 308 A.3d 844, 852 (Pa. Super. 2024) (citation omitted). Importantly, "[h]owever, we are not constrained to give the same deference to any resulting legal conclusions." *In re Est. of Schaefer*, 300 A.3d 1013, 1019 (Pa. Super. 2023) (quotation marks and citation omitted). "This Court's standard of review of questions of law is de novo, and the scope of review is plenary, as we may review the entire record in making our determination." *Id.* (quotation marks and citation omitted)

In her first four issues, Meter argues that, on remand, the orphans' court erred by disregarding this Court's directives from our prior decision. Meter's Brief at 19-27. Specifically, Meter asserts that the orphans' court improperly found that portions of Article 5.2 were unambiguous despite this Court previously holding that Articles 1 and 5.2 were manifestly ambiguous. *Id.* at 20-23. Additionally, Meter contends that the orphans' court erred in determining that, contrary to our prior decision, it could not rely on parol evidence to resolve the ambiguity of Articles 1 and 5.2, proceeding to interpret the Trust as if no extrinsic evidence was presented, and limiting its interpretation of Articles 1 and 5.2 to the language in the Trust. *Id.* at 23-27. Consequently, Meter argues that the orphans' court's decision directly

- 10 -

contradicted this Court's determination that Articles 1 and 5.2 were not capable of interpretation without the use of extrinsic evidence. *Id.* at 19-27. We agree.

When this Court reviewed the orphans' court's initial decision finding that the Trust unambiguously named Snyder as a beneficiary, we found that the orphans' court erred. Specifically, we held, in relevant part:

> [H]ere, there is no way to reconcile the meaning of the word "descendants," as it is used by [Decedent] in Articles 1 and 5.2, by looking solely to the language of the document itself. Accordingly, it was the obligation of the [o]rphans' [c]ourt to look to extrinsic evidence to ascertain the true intent of [Decedent].

*Bany I*, at **5-6.

This Court expressly concluded that the language of Article 5.2, when read in conjunction with Article 1, was ambiguous as to whether Decedent's intent was for Meter to be the sole beneficiary of the Trust, or whether he intended for Meter, her children, Dr. Meter, and Snyder to be the beneficiaries of the Trust. *See id.* Consequently, we ordered the orphans' court, on remand, to take extrinsic evidence to ascertain Decedent's intent regarding who he named as beneficiary or beneficiaries of his Trust precisely because his intention in this regard could not be ascertained from the language of the Trust alone. *See id.*

The law of the case doctrine provides that "upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter." *Mariner Chestnut*

- 11 -

*Partners, L.P. v. Lenfest*, 152 A.3d 265, 282 (Pa. Super. 2016) (quotation marks and citations omitted).  In the instant decision, the orphans' court did precisely what the law of the case doctrine prohibits.  Paying what amounts to little more than lip service to our Order on remand, the orphans' court ignored our directive to untangle the ambiguity in the term "descendants" in the Trust through the use of extrinsic evidence, and instead found that, to the extent Article 5.2 of the Trust created an ambiguity, it was "a patent ambiguity" for which no extrinsic evidence may be taken.[2]  Orphans' Court Opinion, 8/18/2023, at 10.  The orphans' court went on to find—again, in

_____

[2]  A patent ambiguity "appears on the face of the document and is a result of defective or obscure language[,]" whereas a latent ambiguity "arises from collateral facts which make the meaning of a written document uncertain, although the language appears clear on the face of the document." *In re Est. of Cassidy*, 296 A.3d 1219, 1224 (Pa. Super. 2023) (citation omitted). Admittedly, the precedent on the admissibility of extrinsic evidence to resolve patent ambiguities in testamentary documents has been inconsistent. *Compare In re Beisgen's Est.*, 128 A.2d 52, 55 n.3 (Pa. 1956) (stating, "[w]here a patent ambiguity exists on the face of the [w]ill and the language is meaningless or senseless or so uncertain as to be unintelligible as written, parol evidence to explain it is not admissible"), *and In re Est. of Cassidy*, 296 A.3d at 1224 (same), *with In re Hartman's Est.*, 182 A. 234, 238 (Pa. 1936) ("It is true that parol evidence is admissible to explain either a latent or patent ambiguity in a will[.]"), *and In re Est. of McFadden*, 100 A.3d 645, 650 (Pa. Super. 2014) (en banc) ("When a will is ambiguous on its face, a court may consider extrinsic evidence to glean the testator's intent."); *Est. of McKenna*, 489 A.2d 862, 867 (Pa. Super. 1985) (same).  Ultimately, this discrepancy does not affect our analysis, nor must we determine whether the ambiguity is patent or latent; like the orphans' court below, we are bound by our prior determination that the language of Articles 1 and 5.2 was ambiguous and the directive that the orphans' court utilize extrinsic evidence to resolve this ambiguity.  *See Bany I*, at **5-6; *see also Mariner Chestnut Partners, L.P.*, 152 A.3d at 282.

contravention to our directive on remand—that Article 5.2 of the Trust was, in fact, unambiguous, providing "as clear an indication of distributary intent as may be found in [the Trust]," and that Decedent's inclusion of the phrase "per stirpes" suggested "an intent to depart from Article 1's limitation of the term 'descendants.'" *Id.* at 10-11.

Based upon this interpretation of Article 5.2, the orphans' court found that Decedent's intent was not for Meter to be the sole beneficiary of the Trust, but rather for Meter, her children, Dr. Meter, and Snyder to be the beneficiaries of the Trust and "to craft a contingency provision [that] would allow the descendants of these designated individuals to inherit should said named individuals predecease the Decedent." *Id.* at 10-11. This finding is based on the Trust's use of the terms "descendants" and "per stirpes," the meaning of which, despite our Order, the orphans' court never endeavored to discern within the context of the Trust. *See id.* The orphans' court explained that because it found much of the testimony presented on remand was either irrelevant or not credible, it was "left in the same position as if no extrinsic evidence were permitted at all, and must rely on established principles of law and the language within the four corners of the trust in order to resolve the ambiguity inherent in Article 5.2 of [the Trust]." *Id.* at 11-12. In other words, the orphans' court reached the same conclusion on remand, using precisely the same method that it did in reaching its original decision.

As this Court had previously ruled that the terms "descendants" and "per stirpes" in Articles 1 and 5.2 created an ambiguity as to Decedent's intent in naming the beneficiary or beneficiaries of the Trust, and that extrinsic evidence was required to determine the meaning of these terms, the orphans' court's decision finding that the language of the Trust was not ambiguous and/or that no extrinsic evidence could be used was a clear violation of the law of case doctrine. *See Mariner Chestnut Partners, L.P.*, 152 A.3d at 282; *see also* Orphans' Court Opinion, 8/18/2023, at 10-12. We therefore conclude that the orphans' court erred in determining that certain portions of Article 5.2 were unambiguous and that it could not rely on extrinsic evidence to resolve the ambiguities created by Articles 1 and 5.2 of the Trust.

In her remaining issues, Meter argues that the orphans' court's interpretation of Decedent's intent in naming the beneficiary or beneficiaries of the Trust is not supported by the record. Meter's Brief at 27-42. According to Meter, the orphans' court "went out of its way to outright reject, simply ignore, or grossly misconstrue all of the evidence [she] presented." *Id.* at 38. In addition to challenging the orphans' court's determination that her testimony was not credible, Meter contests the orphans' court's finding that the testimony of Nowotny and Laine, both of whom testified that it was Decedent's intention to make Meter the sole beneficiary of the Trust, was not relevant to the interpretation of Decedent's intentions. *Id.* at 29-34. Additionally, Meter contends that the orphans' court improperly failed to take

- 14 -

into consideration Decedent's prior wills to ascertain his intentions regarding the Trust. *Id.* at 34-38. Meter further asserts that the orphans' court improperly relied on the testimony of Dr. Meter, who testified that he understood that it was Decedent's intention to make sure Snyder was taken care of after Snyder was in an accident that left him disabled, in concluding that Decedent intended for Snyder to be a beneficiary of the Trust. *Id.* at 41-42.

Meter's claims involve the interpretation of the Trust document, which is a question of law. ***Trust of John S. Middleton***, 313 A.3d 1079, 1088 (Pa. Super. 2024). The principles applicable to the construction of a trust are the same as those used in the construction of wills. ***Estate of Agnew v. Ross***, 152 A.3d 247, 262 (Pa. 2017) (citing ***Matter of Tracy***, 346 A.2d 750, 752 (Pa. 1975)). The guiding principle in the interpretation of a trust is the settlor's intent, "and if that intent is not contrary to law, it must prevail." ***In re Tr. B Under Agreement of Richard H. Wells Dated Sept. 28, 1956***, 282 A.3d 1149, 1156 (Pa. Super. 2022) (citation omitted). To ascertain the intent of the settlor, courts must examine "(a) all the language contained in the four corners of the instrument; (b) the distribution scheme; (c) the circumstances surrounding the testator or settlor at the time the will was made or the trust was created; and (d) the existing facts." *Id.* (citation and brackets omitted). A court "shall not resort to canons of construction except where the language of the trust is ambiguous or conflicting and the settlor's intent cannot

be garnered from the trust language." ***In re Amended and Restated Deed of Tr. of Margaret M. Holdship Dated February 26, 1981 fbo Holdship***, 288 A.3d 919, 927 (Pa. Super. 2023).

As explained above, we are bound by this Court's prior determination that the Trust was ambiguous as to who Decedent intended to benefit from the Trust and that extrinsic evidence was necessary to resolve the ambiguity. ***See Bany I***, at **5-6. The orphans' court found most of the extrinsic evidence Meter presented to lack credibility or irrelevant. ***See*** Orphans' Court Opinion, 8/18/2023, at 11-12. Beginning with Meter's testimony, the orphans' court found her entirely incredible, as her claim that Decedent intended for her to be the sole beneficiary of the Trust contradicted testimony she made during her divorce proceedings in Connecticut. ***Id.*** at 11.

It further found Nowotny's testimony relating to Decedent's intent "unavailing" because he never spoke with Decedent about the Trust and communicated solely with Meter regarding the drafting of the Trust. ***Id.*** at 11. The court stated that it had "little doubt that [Meter] would have desired to designate herself as the only beneficiary under the Trust," but that "it is the intent of Decedent that is the controlling factor, not the desires of [Meter] or her instructions to the scrivener." ***Id.***

With respect to Laine, the orphans' court observed that she spoke with Decedent about his intent as to who will benefit from his Trust roughly eighteen months after he executed the Trust. ***Id.*** at 12. It therefore found it

to be unhelpful as to discerning Decedent's intent when he created the Trust. *Id.*

As stated above, the orphans' court found the language of the Trust to be unambiguous and extrinsic evidence was neither required nor allowed to be considered. To the extent it considered the extrinsic evidence presented, the orphans' court elected to rely solely on the testimony of Meter's ex-husband, Dr. Meter. *Id.* According to the orphans' court, "the credible testimony of [Dr.] Meter regarding [Decedent]'s desire to ensure that [Snyder] was taken care of after [Snyder's] accident" supported its conclusion that Decedent's intent was not for Meter to be the sole beneficiary of the Trust, but rather that he intended for Meter, her children, Dr. Meter, and Snyder to be the beneficiaries of the Trust. *Id.*

At the outset, as stated above, we recognize that we are bound by the orphans' court's findings of fact and credibility determinations that have record support. *Est. of A.J.M.*, 308 A.3d at 852. Thus, we reject Meter's request that we either ignore or overrule the orphans' court's determination as to her credibility. Nonetheless, we emphasize that "our task is to ensure that the record is free from legal error and to determine if the orphans' court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence." *Id.*

We have thoroughly reviewed the record and conclude that it does not support for the orphans' court's determination. Beginning with its findings

related to Dr. Meter's testimony, the orphans' court is correct that Dr. Meter testified that Decedent expressed a desire for Snyder to be taken care of after his accident; however, Dr. Meter never testified that he had any information or indication as to Decedent's intent to make Snyder a beneficiary of the Trust. *See* N.T., 6/2/2023, at 18. To the contrary, the record reflects that on cross-examination, Dr. Meter testified as follows:

> Q.     Dr. Meter, I believe you had testified that when it came to the beneficiaries, you used words in your answer that the beneficiaries were to be identified by Ms. [Meter]. And of course, referring to Mary Lee Meter. So I Just want to clear that up. Is it your understanding that it was [Decedent]'s intention that Ms. [Meter] was to have the authority to decide who the beneficiaries were or that the beneficiaries were specifically designated in the trust at issue?
>
> A.     I don't think I'm clear as to which his intentions were.
>
> Q.     [You're] uncertain as to whether [Decedent]'s intention that Ms. Meter had to the authority to decide the beneficiaries or whether he wanted to specifically designate them?
>
> A.     That's correct.

*Id.* at 23-24.

Accepting the orphans' court's credibility determinations as to the witnesses presented, the only extrinsic evidence available upon which the orphans' court could have relied in determining the intended beneficiary or beneficiaries of Decedent's trust are Decedent's past wills. "It has long been held in Pennsylvania that examination of prior wills is helpful in determining the intention of the testator." *Est. of Schwarzbarth*, 466 A.2d 1382, 1385 (Pa. Super. 1983). Although the orphans' court asserted that Decedent's prior

wills support its conclusion that Decedent intended for Snyder to be a beneficiary of the Trust, our review of these documents leads to the contrary conclusion.

There is no dispute that in his 1974 Will, Decedent designated his wife as the sole and primary beneficiary of his estate, and Meter as the sole contingent beneficiary of his estate. **See** Amended Counterclaim of Trustee, Mary Lee Meter, 12/4/2020, Exhibit B. There is likewise no dispute that in his 2013 Will, which he executed after the death of his wife, Decedent left his entire estate to Meter and her then-husband, Dr. Meter.[3] **See id.**, Exhibit C. Neither the 1974 Will nor the 2013 Will made any mention of Snyder, let alone name him as a beneficiary. **See id.**, Exhibits B and C. In his final will, executed in 2015—the same year as Decedent created the Trust—Decedent again left all his personal property to Meter and the residue of the estate to the Trust. Respondent's Proposed Findings of Fact and Conclusions of Law, 7/12/2023, Exhibit 8. Snyder is not named as a beneficiary in any respect. **Id.** In fact, the only mention of Snyder in the 2015 Will is that Dr. Meter and Snyder were to serve as co-personal representatives in the event Meter was unable fulfill that role. **Id.**

---

[3] Meter was awarded Dr. Meter's share of Decedent estate as part of their divorce. **See** N.T., 6/2/2023, Petitioner's Exhibit 2 (Memorandum of Decision – Divorce, 9/4/2019, at 26).

Decedent's prior wills clearly and unambiguously support a finding that Decedent's intent was for Meter to be the sole beneficiary of the Trust. This conclusion is supported by the only other uncontroverted evidence presented at the hearing regarding Decedent's stated intent—the testimony of Laine. Laine testified that she visited Decedent near the end of his life while he was in a nursing home and that Decedent told her that he was leaving everything to Meter and that he was not leaving anything to Snyder. N.T., 6/2/2023, at 149-50. This evidence serves as confirmation of what appears in each of Decedent's wills: Decedent continued to intend, as he did since 1974, that Meter be the sole beneficiary of his estate. Although the timing of the conversation led the orphans' court to find Laine's testimony to be not relevant to the question of the Decedent's intent when creating the Trust, the orphans' court did not find her testimony not to be credible. ***See*** Orphans' Court Opinion, 8/18/2023, at 12.

Based on the foregoing, we conclude that the orphans' court erred in finding Snyder an intended beneficiary of the Trust and entering a declaratory judgment in favor of Snyder and against Meter, as the court failed to adhere to this Court's prior decision in this matter and also issued a decision not supported by the evidence of record. We therefore reverse.

Order reversed. Case remanded for the entry of an Order consistent with this decision such that Meter is identified as the sole beneficiary of the Trust. Jurisdiction relinquished.

Judge Dubow joins the memorandum.

President Judge Emeritus Stevens notes dissent.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/17/2024